1  FREUND & BRACKEY LLP
Thomas A. Brackey II (SBN 162279)
2      *tbrackey@freundandbrackey.com*
Joshua G. Zetlin (SBN 273086)
3      *jzetlin@freundandbrackey.com*
Jugpreet S. Mann (SBN 306113)
4      *Jpmann@freundandbrackey.com*
427 North Camden Drive
5  Beverly Hills, CA 90210
Tel: 310-247-2165
6  Fax: 310-247-2190

7  Attorneys for Petitioner,
    MARTIN KHODABAKHSHIAN

8

9              UNITED STATES DISTRICT COURT

10            CENTRAL DISTRICT OF CALIFORNIA

11  MARTIN KHODABAKHSHIAN, an       Case No.
    individual,
12                                   DECLARATION OF JOSHUA G.
                                     ZETLIN IN SUPPORT OF MOTION
13            Petitioner,            FOR ORDER CONFIRMING
                                     ARBITRATION AWARD AND FOR
14         v.                        ENTRY OF JUDGMENT IN
                                     CONFORMITY THEREWITH
15  FILMWORKS ENTERTAINMENT,
    INC., a California corporation; and
16  DOES 1 through 25,              Date:
                                     Time:
17            Respondent.            Place:
                                     Judge:
18

19

20         **DECLARATION OF JOSHUA G. ZETLIN**

21      I, JOSHUA G. ZETLIN, declare as follows:

22      1.   I am an attorney at law duly licensed to practice before all Courts in the

23  state of California and before the United States District Court for the Central District

24  of California.  I am an associate at Freund & Brackey LLP, counsel of record for

25  Petitioner MARTIN KHODABAKHSHIAN ("Khodabakhshian").  I submit this

26  Declaration in support of Petitioner Khodabakhshian's Motion For Order

27

28

1  Confirming Arbitration Award And For Entry Of Judgment In Conformity

2  Therewith.

3       2.    I have personal knowledge of all facts set forth herein and could and

4  would competently testify thereto if called as a witness.

5       3.    Khodabakhshian is television producer who has earned multiple Emmy

6  Awards in recognition of his professional accomplishments. In or about 2011,

7  Khodabakhshian produced and directed a documentary motion picture entitled

8  "*Breathe*," which depicts a world-renowned free-diver's attempts to break the free-

9  diving world record (the "Film").

10      4.    On or about June 27, 2012, Khodabakhshian entered into the

11  Distribution Agreement (the "Contract") with Respondent FILMWORKS

12  ENTERTAINMENT, INC. ("FilmWorks"), which is an international distributor of

13  narrative and documentary motion pictures. A true and correct copy of the Contract

14  is attached hereto as **Exhibit A**.

15      5.    Pursuant to the Contract, Khodabakhshian licensed the Film to

16  FilmWorks for distribution and FilmWorks, after recouping its actual distribution

17  costs and retaining a distribution fee, was supposed to remit the balance of gross

18  receipts from exploitation of the Film to Khodabakhshian. Moreover, Section 10 of

19  the Contract required FilmWorks to "make and deliver to Producer reports relating

20  to the exploitation of the [Film] setting forth statements of all Gross Receipts,

21  Distribution expenses and Distribution Fees in connection with the exploitation of

22  the [Film]." Additionally, Section 16 of the Contract provided "The prevailing party

23  in any arbitration shall be entitled to receive its reasonable outside attorneys fees

24  and costs."

25      6.    It is my understanding that KHODABAKHSHIAN fully delivered the

26  Film to FilmWorks. FilmWorks exploited the Film via numerous media outlets,

27

28

1  including but not limited to, by licensing the Film to Red Bull and National
2  Geographic.

3       7.      FilmWorks has acknowledged outstanding royalties owed to
4  Khodabakhshian, including but not limited to, on or about February 1, 2014, when
5  FilmWorks delivered to Khodabakhshian a report, accounting for the Film's paid
6  sales and FilmWorks' recoupable expenses during the period of October to
7  December 2013. The report listed $29,777.42 as an amount that was due to
8  Khodabakhshian during such period.

9       8.      I am informed and believe FilmWorks failed to pay Khodabakhshian
10  certain amounts rightfully due under the Contract.

11       9.      I am informed and believe that FilmWorks ceased delivering to
12  Khodabakhshian the quarterly accounting statements required under the Contract.

13       10.     In or about September 30 2014, Khodabakhshian sent a formal notice
14  of breach to FilmWorks via registered mail and email, demanding complete
15  reporting and payment of all unpaid receipts collected by FilmWorks in connection
16  with the Film. However, FilmWorks received no response to this correspondence.

17       11.     On or about January 13, 2015, pursuant to Section 16(a) of the
18  Contract, KHODABAKHSHIAN filed a Demand For Arbitration with the American
19  Arbitration Association ("AAA"), for Breach of Contract; And Demand For
20  Accounting  (Case No. 01-15-0002-4527) (the "Demand"). A true and correct copy
21  of the Demand is attached hereto as **Exhibit B.**

22       12.     On or about January 14, 2015, Khodabakhshian served the Demand on
23  FilmWorks.

24       13.     On or about March 26, 2015, Lawrence P. Mortorff was selected to
25  preside over the arbitration (the "Arbitrator").

26       14.     A preliminary telephonic conference was held in this matter on or about
27  April 16, 2015. Thereafter, Lawrence P. Mortorff issued a scheduling order and

28

several additional telephonic conferences occurred. The arbitration hearing was scheduled for August 18, 2015 ("Arbitration Hearing").

15.     On or about August 5, 2015, the Parties negotiated a settlement and executed a written settlement agreement memorializing such resolution ("Settlement Agreement"), which included a proposed Stipulated Award dated August 14, 2015. A true and correct copy of the Settlement Agreement is attached hereto as **Exhibit C.**

16.     On or about August 11, 2015 the Parties cancelled the Arbitration Hearing by filing the Settlement Agreement with the AAA and Arbitrator.

17.     The Parties agreed in the Settlement Agreement that FilmWorks would pay Khodabakhshian in monthly installments pursuant to a payment plan and that a stipulated arbitration award would be filed with the AAA. Pursuant to the terms of the Settlement Agreement, KHODABAKHSHIAN would hold the Stipulated Award in abeyance and would only seek to confirm it in court in the even that FilmWorks breached the Settlement Agreement.

18.     On or about August 25, 2015, the Arbitrator issued a stipulated award (the "Stipulated Award"), in favor of KHODABAKHSHIAN and against FilmWorks, approving the Settlement Agreement and awarding One Hundred Thousand Dollars ($100,000), less any settlement payments made by FilmWorks under the Settlement Agreement, to Khodabakhshian. A true and correct copy of the Stipulated Award is attached hetero as **Exhibit D**.

19.     FilmWorks complied with its monthly payment obligations under the terms of the Settlement Agreement until February 2016. In or about March 22, 2016, Khodabakhshian sent FilmWorks a notice of default for failure to make its February 2016 monthly payment (the "Initial Notice Of Default") and FilmWorks cured such default. Thereafter, FilmWorks continued to make payments until May 2016.

20.     In or about June 15, 2016, Khodabakhshian sent FilmWorks a notice of default for failure to make its May 2016 monthly payment (the "Second Notice Of Default"). However, FilmWorks failed to respond to the Second Notice Of Default and it subsequently failed to make its June 2016 monthly payment.

21.     Khodabakhshian sent FilmWorks a third notice of default in regards to FilmWorks' failure to make both its May 2016 monthly payment and June 2016 monthly payment (the "Third Notice of Default"). However, Khodabakhshian again received no response from FilmWorks and never received any further payments. Until this date, FilmWorks has paid a total of Ten Thousand Eight Hundred Eighty Dollars and Forty Five-Cents ($10,880.45) under the terms of the Settlement Agreement. Accordingly, the amount outstanding under Stipulated Award is Eighty Nine Thousand One Hundred Nineteen Dollars and Fifty-Five Cents ($89,119.55).

22.     Despite Khodabakhshian's repeated notices of default, Respondent remains in uncured default of its monthly payment obligations under the Settlement Agreement. Accordingly, Khodabakhshian hereby seeks an Order from this Court confirming the Stipulated Award.  Khodabakhshian also requests that Judgment be entered in conformity with the Stipulated Award, with the Ten Thousand Eight Hundred Eighty Dollars and Forty Five-Cents ($10,880.45) paid by FilmWorks under the terms of the Settlement Agreement deducted from the One Hundred Thousand Dollars ($100,000) Stipulated Award.

23.     Pursuant to Local Rule 7-3, on August 12, 2016, Jugpreet Mann, an associate at my firm, sent FilmWorks a meet and confer letter via electronic mail to *hmeier@filmworksent.com* and first class mail to FilmWorks's address of record, 39252 Winchester Road, Suite 107-227, Murrieta, CA 92563, to discuss the current motion, as well as potential resolution of this matter. Neither we nor Khodabakshian received a response. A true and correct copy of the Meet And Confer Letter is attached hereto as **Exhibit E**.

24.     Khodabakhshian is a citizen of Orlando, Florida and, upon information and belief, FilmWorks is a corporation duly organized and existing under the laws of the state of California and primarily operating out of Los Angeles County.  A true and correct copy of the CA Secretary of State Business Search results for FilmWorks Entertainment Inc. is attached hereto as **Exhibit F**.

25.     The Stipulated Award appears to be based upon the terms of the Settlement Agreement and proposed stipulated award that had been mutually agreed to by FilmWorks and Khodabakhshian and jointly submitted to the Arbitrator.

26.     Upon information and belief, in preparing the Stipulated Award, the Arbitrator solely gave effect to the rights and remedies agreed upon by the Parties.

27.     It is my understanding that the Arbitrator issued the Stipulated Award pursuant to the Settlement Agreement between the Parties and not based upon any finding of law or fact.

28.     Since the Stipulated Award is based upon the mutually agreed upon Settlement Agreement, I do not anticipate FilmWorks will raise any of the criteria under Section 10 and 11 of the FAA as grounds for opposing confirmation of the Stipulated Award.

29.     I do not believe any facts exist that would indicate application of any of the grounds under Section 10 and 11 of the FAA to warrant vacating, correcting, or modifying the Stipulated Award.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed this 23rd day of August 2016 at Beverly Hills, California.

_____
Joshua G. Zetlin

DECLARATION OF JOSHUA G. ZETLIN

Freund & Brackey LLP
427 North Camden Drive
Beverly Hills, CA 90210

# EXHIBIT A

# DISTRIBUTION AGREEMENT

AGREEMENT dated as of ___June 27, 2012___ between FilmWorks Entertainment Inc. ("Distributor"), and ___*(illegible)*___ ("Producer") regarding the distribution of a theatrical motion picture entitled "_Breathe ___" (the "Picture"), produced by Producer.

1. **Condition Precedent.** This agreement shall be subject to the following conditions precedent:

    a.  Producer's and Distributor's execution of this Agreement; and

    b.  Distributor's receipt and approval of the Rights Materials (as defined in Schedule A hereto).

    No such acceptance by Distributor shall be deemed to relieve Producer of any of its other obligations under this Agreement, including without limitation the representations, warranties, and indemnification provisions hereof.

2. **Grant of Rights.**

    a.  Producer hereby licenses to Distributor the Rights in the Picture in the Territory during the Term (as such terms are defined below).

    b.  As used herein, the following terms shall have the following meanings:

        i.  The "Rights" means the exclusive right to distribute, subdistribute, exhibit, rent, lease, license, transmit, retransmit, broadcast, advertise, publicize, promote and otherwise exploit the Picture in all languages (subtitled, dubbed and/or parallel tracked) by any means and in any medium now known or hereafter devised, including without limitation theatrically, non-theatrically, by means of television (including without limitation free, pay, cable, pay per view and satellite) by means of home video devices (including without limitation videocassette, videodisc, DVD, Blu-Ray, HD-DVD, video on demand and near video on demand), wireless, digital, mobile, all means of electronic transmission and on the Internet. Without limiting the foregoing, the Rights shall include the right, and to grant others the right, to edit the Picture to conform to censorship and time limitations in any part of the Territory.

        ii. The "Picture" means the theatrical motion picture entitled "_Breathe_" which is a new and original, not previously distributed or exploited, live action, sound and talking motion picture in color on 35mm film, DV, or HD, 30 to 120 minutes in duration with

stereo, or Dolby SR sound, recorded originally in the English language.

iii.   Additional Materials: Licensor will provide Distributor all such additional materials owned, controlled, and/or available to Licensor (including materials reasonable available from a third party), fully cleared and authorized by Licensor for Distributors' unrestricted use and exploitation as permitted hereunder, as Distributor may require for the preparation, distribution, and exploitation of the Picture hereunder, including without limitation all supplemental footage and materials related thereto that are owned, controlled by, and/or available to, Licensor such as bonus material, deleted scenes, outtakes, behind-the-scenes footage, screen tests, promotional films, trailers, production stills, production storyboards, animatics, concept drawings and production sketches.  The Picture will be deemed to include any and all such materials provided by Licensor to Distributor and any and all materials created or obtained by Distributor for purposes of exploiting any or all of the Rights Granted.

iv.   The "Territory" means the Universe

v.    The "Term" means 10 years commencing on Delivery of the Picture (as defined in section 3), and renewable, at Distributor's discretion, for successive and unlimited one year terms under the same terms and conditions of this Agreement.  At the end of the Term or upon earlier termination, the Distributor shall have a 6 month non-exclusive period in which it may sell all existing stock relating to the Picture on the terms provided herein (the "Sell Off Period").

vi.   Coterminous: Distributor retains the right to enter into coterminous arrangements, on customary terms and conditions, with third parties such that the expiration periods of such coterminous arrangements extend beyond the expiration of the Term of this Agreement.  Such coterminous arrangements will also comply with the rights befitting Distributor pursuant to this Agreement as established in the 'Grant of Rights' section.

vi.   Credits: Distributor shall receive a first position logo and first position presentation credit on screen and in the billing block of paid ads in the Territory, in form and substance as directed by Distributor. Distributor shall have the right to accord appropriate credits to any of its sub-distributors.  Distributor shall adhere to all credit obligations of which it is notified in writing; provided, however, that no casual or inadvertent failure by Distributor or any

2

failure by its sub-distributors shall constitute a breach hereof. Promptly following Distributor's receipt of written notice detailing, with reasonable specificity, a failure by Distributor to comply with its credit obligations, Distributor shall use commercially reasonable efforts to prospectively cure such failure on materials created after the date of such notice, provided that in no event shall Distributor be obligated to recall any materials (including prints, one-sheets, etc.) created prior to such notice. The Picture as delivered to Distributor shall contain all screen credits required by Producer, and, provided that Distributor does not alter such credits, Producer does hereby indemnify, hold harmless and defend Distributor in connection with any claims arising from such screen credits

3.   **Delivery.** Producer shall make Delivery of the Picture no later than July 30, 2012. As used herein, "Delivery of the Picture" shall mean the complete delivery to Distributor of the elements set forth in the delivery schedule attached hereto (the "Schedule A"). Notwithstanding the foregoing, Producer undertakes to provide to the Distributor access to, and the right to use and exploit the following and shall use best efforts to ensure such access is at no cost (other than duplication and shipping and any applicable taxes): (i) all promotional and publicity materials (including menu and cover artwork, 5.1 original language printmaster, teasers, promos, trailers and stills) available to or created by Producer or a third party; and (ii) any bonus materials used or available for use ((i) and (ii) collectively referred to as, the "Bonus Materials").

    a.   Producer shall deliver picture with a minimum run time of 70 minutes or longer, unless otherwise approved by Distributor.

    b.   Producer shall deliver picture with original cut (version provided on screener) without alteration with the exception of exchange of music as agreed.

4.   **Producer's Representations and Warranties.** Producer hereby represents and warrants as follows:

    a.   Producer is a Limited Liability company, or Corporation incorporated, organized and subsisting under the laws of its place of incorporation and is empowered to conduct its business in every jurisdiction in which it carries on business;

    b.   Producer has the right, power and authority to enter into this Agreement and to grant to Distributor the rights set forth herein.

    c.   Producer has not entered into and will not enter into any agreement nor has Producer incurred nor will Producer incur any liability or obligation that might interfere with Distributor's exploitation of the Picture or any of its

3

other rights hereunder. Producer has not previously distributed or exploited the Picture nor has Producer granted the right to do so to any other party or entity. The Picture and the Rights are not and will not be subject to any claims, liens or encumbrances.

d.  The completion date of the Picture is _2011_____.

e.  The Picture, all elements thereof and all of the materials and services rendered, furnished, or obtained by Producer hereunder shall be original and the exercise by Distributor of its rights hereunder will not violate or infringe upon the rights of any third party under the laws of copyright, trademark, privacy, publicity, defamation, moral rights or otherwise.

f.  Each agreement between Producer and a party rendering services or furnishing materials, facilities or rights in connection with the Picture provides that such agreement is freely assignable and that Producer is the sole owner of all right, title and interest, under copyright or otherwise, in and to the Picture, all such materials and rights and all of the results and proceeds of such party's services. Each such agreement provides further that such materials, rights and results and proceeds shall be a work made for hire for Producer under United States copyright law, that such party assigns to Producer all of such party's right, title and interest, if any, under copyright or otherwise in and to such materials, rights and results and proceeds and that such party waives any "moral rights" or similar rights with respect to such materials, rights or results and proceeds.

g.  Producer has timely paid all wages, fees and other payments required to or for the benefit of parties rendering services or furnishing materials, facilities or rights in connection therewith. Producer has made all withholdings required by law or by any applicable union or guild agreement ("Guild Agreement") from sums payable to such parties and has paid all taxes and employer contributions due in connection therewith.

h.  Producer has obtained from all parties rendering services or furnishing materials, facilities or rights in connection with the Picture, subject to limitations imposed by any Guild Agreement of which Producer gives written notice to Distributor, the right to exploit the Rights, including without limitation the right, throughout the universe in perpetuity, by any means and in any medium now known or hereafter devised and to use such party's name, voice, likeness and biographical material in and in connection with the advertising, publicizing and promotion of the Picture, in merchandising and commercial tie-ins relating thereto, for informational purposes and in general goodwill advertising. Such rights shall be without condition or limitation.

4

i.  Distributor shall not incur any liability or obligation for Residuals and Royalties (as defined below) to any parties rendering services or furnishing materials, facilities or rights in connection with the Picture.

j.  The performing rights in any music used in the Picture are owned or licensed by Producer, in the public domain or controlled by performing rights societies in each territory in which the Picture is distributed.

k.  The Picture shall be protected by copyright throughout the world. Producer has registered the Picture for United States copyright. Producer hereby appoints Distributor as its attorney-in-fact for the purpose of completing, executing and submitting such registration forms and other documents as may be required in connection with copyright protection, which such appointment shall be deemed coupled with an interest and irrevocable.

5.  **Distributor's Representations and Warranties.** Distributor hereby represents and warrants to Producer as follows:

a.  Distributor is a Corporation incorporated, organized and subsisting under the laws of its place of incorporation and is empowered to conduct its business in every jurisdiction in which it carries on business;

b.  Distributor has the right, power and authority to enter into this Agreement.

6.  **Indemnity.** Each party (the "Indemnitor") hereby indemnifies and holds harmless the other (the "Indemnitee") from and against all loss, cost, damage or expense (including reasonable outside attorneys fees) incurred or suffered by the Indemnitee in a claim by a third party arising out of the Indemnitor's breach of any of its representations or warranties herein. The Indemnitee shall promptly notify the Indemnitor of any claim or action subject to indemnification. The Indemnitor shall assume the defense of such claim or action. The Indemnitee may participate in such defense by its own counsel at its own expense. The parties' representations, warranties and indemnities shall survive the expiration or termination of this Agreement.

7.  **Gross Receipts.** As used herein, "Gross Receipts" means all sums not subject to refund or credit actually received by Distributor from the exercise of the Rights when received and earned. Distributor shall be entitled to maintain reserves for returns of up to 15% for home video units sold for a period of 8 months following the DVD release.

8.  **Distribution Fee and Costs.**

a.  Distributor shall be entitled to retain 30% of Gross Receipts as a distribution fee ("Distribution Fee"). Distributor shall have sole control over the exploitation of the Rights. Distributor makes no representations

5

☑ 006

or warranties respecting the amounts, if any, to be earned from the distribution of the Picture.  Subject to the foregoing, Distributor shall market, advertise, publicize and promote the Picture to the best of its ability consistent with sound business practice so as to maximize Gross Receipts.

9.   **Distribution Expenses:**

   a.   "Distribution Expenses" means and includes all costs and expenses incurred in connection with the manufacture, production, distribution, marketing, advertising, exploitation and turning to account of the Picture and/or any of the Rights Granted of whatever kind, and include without limitation all of the following as applicable with respect to the Rights granted hereunder.

   b.   Distributor also agrees not to spend in excess of Thirty Thousand Dollars (US $_30,000.00_) in combined Distribution Marketing Costs, for the term of the Agreement, without prior written approval by Producer. For purposes of this Agreement, Distribution Marketing Costs are defined and limited to all costs incurred with the design and creation of artwork, photography, advertising, public relations activities, mastering, authoring and creation of any/all special features, editing, compressing, digitizing and producing materials as outlined in schedule "A".  Specifically excluded from the Distribution Marketing Expense Costs, are all other expenses not previously defined above, including but not limited to manufacturing, replication, duplication, packaging, warehouse handling, outbound shipping, price stickering, carton labeling, and all other pick, pack and ship services as well as all merchandising costs; all costs of returns shipping, handling and processing and other expenses associated with exploitation of the Picture.

   c.   All costs of obtaining, manufacturing, preparing, creating and/or producing physical materials in connection with exploitation of the Picture and/or each of the Rights Granted, including without limitation all costs of duped and dubbed negatives, soundtracks, tapes, Videograms (including without limitation the creation, capture, compression, and authoring of Videogram masters and all costs of design, development, manufacture, production, replication, duplication and packaging of the Videograms), duplicating material and facilities and all other material manufactured for the use in connection with the Picture, and all costs of storing, shipping, and all other expenses connected therewith (including without limitation all costs of warehouse handling, outbound shipping, price stickering, carton labeling, and all other pick, pack and ship services); all merchandising costs; all costs of returns shipping, handling and processing; and all other expenses incurred in connection with the distribution of the Picture hereunder.  Distributor may manufacture or

6

cause to be manufactured as many or as few duped negatives, positive prints, Videograms and/or other materials for use in connection with the Picture as Distributor, in its sole discretion, may consider advisable or desirable. If not supplied by Licensor, Distributor will have the right to advance the cost of producing any materials identified on the attached Schedule "A", including without limitation a 16:9 Digitbeta (or other approved format) master Videogram of the Picture, including without limitation the costs of creating and/or producing, authoring, capture and compression of any DVD bonus materials or dubbed masters not provided by Licensor. All costs of creating such materials not supplied by Licensor will be included in Distribution Expenses and will be recoupable by Distributor from Licensor Receipts or other monies otherwise payable to Licensor. Any production or creation of any Delivery Materials by Distributor will not be construed as a waiver by Distributor of any of Licensor's obligations to deliver any Delivery Materials hereunder, or a waiver of any of Distributors' rights or remedies related to Licensor's failure to fulfill its Delivery obligations.

d.      All costs of advertising, publicizing and/or exploiting the Picture by such means and to such extent as Distributor determines in its sole discretion, including without limitation all advertisements, press books, artwork, publicity materials, advertising accessories, and trailers, Videogram screeners, and all other pre- and post- release advertising and publicity, all so-called marketing development funds, retail placement fees, or charges, in-store marketing credits and allowances, in connection with the exploitation of the Picture and/or the Rights Granted.

e.      All other costs of preparing and delivering the Picture for distribution hereunder, including without limitation all costs incurred in connection with the production of foreign and/or domestic language versions of the Picture as applicable in the Territory, whether dubbed, subtitled, or otherwise, all costs of uploading, encoding, storing and delivering digital files for digital distribution, as well as any and all costs and expenses in connection with changing the title, re-cutting, re-editing or shortening or lengthening the Picture for release in the Territory or for exhibition on television or other media, or in order to conform to the requirements of censorship authorities, or for any other reason not in Distributors' control, as well as all costs in connection in or as part of Videograms of the Picture, and all costs of preparing such Videograms, devices and/or platforms, including without limitation the cost of creating menus and other navigational elements and designs in connection therewith.

f.      All third-party costs and expenses incurred in connection with the collection of Gross Receipts from exhibitors, sub-distributors, sub-licensees, retailers, and others in connection with the Picture.

7

g.  All costs (including reasonable outside attorneys' fees), losses, damages, or liabilities suffered or incurred by Distributor in connection with: any action taken by Distributor (whether by litigation or otherwise) in copyrighting, protecting, and/or enforcing the Rights Granted; reducing or minimizing the matters referred to in (e) above, the collection of Gross Receipts; and other sums due Distributor from exhibitors, sub-distributors, retailers, and others relating to the distribution of exhibition of the Picture; preventing and/or recovering damages for unauthorized exhibition or distribution of the Picture, or any impairment of, encumbrance on or infringement upon, the Rights Granted; all third–party accounting and legal fees and costs incurred in connection with this Agreement; an allocable share attributable to the Picture of costs of prosecuting and defending actions under the antitrust laws and/or communication laws; and an allocable share attributable to the Picture of costs of auditing books and records of any sub-distributor, retailer or licensee.

h.  The cost of all insurance paid or incurred by Distributor covering or relating to the Picture, including without limitation errors and omissions insurance and all insurance on negatives, positive prints, sound materials, Videograms, and other physical property, it being understood, however that Distributor shall not be obligated to take out or maintain any such insurance.

i.  Expenses of transmitting to the United States any funds accruing to Distributor from the Picture in foreign countries and any discounts from such funds taken to convert such funds directly or indirectly to U.S. dollars.

j.  An allocable share attributable to the Picture of royalties payable to manufactures of sound recording and reproducing equipment and dues and assessments of, and contributions by Distributor to, AMPTP, MPAA, MPEAA, the Academy of Motion Pictures Arts and Sciences and other trade associations or industry groups, but only for the purposes relating to the production, distribution, export, import, advertising, exploitation, and general protection of the motion picture.

10.  **Allocation of Gross Receipts; Accounting and Audit.**

a.  The Gross Receipts derived from the Picture shall be applied as follows: first, Distributor shall recoup its Distribution Costs; second, Distributor shall retain its Distribution Fee; and last, the balance shall be remitted to Producer. All payments hereunder by Distributor are subject to any withholding or deduction required by law, or government or tax authority regulation. To the extent the V.A.T. applies, it shall be in addition to all amounts set forth in this Agreement. In recouping its Distribution Costs,

8

Distributor may fully cross-collateralize Gross Receipts from exploitation of all the Rights throughout the Territory.

b.   Distributor shall make and deliver to Producer reports ("Reports") relating to the exploitation of the Rights setting forth statements of all Gross Receipts, distribution expenses and Distribution Fees in connection with the exploitation of the Rights.  Such Reports shall be provided to Producer quarterly for the first three years (within 60 days of the close of each quarter) and annually for the rest of the Term, provided Distributor shall not have to deliver Reports or account in respect of any accounting period after the initial two years if Distributor does not owe Producer any amounts hereunder.  Any share of Gross Receipts shown as due to Distributor on any such Report shall be paid within 15 days of said Report.

c.   Producer shall have customary right to audit the Distributor's financial records ('Records') relating to the Statement for a period of twenty four (24) months following issuance thereof.  Such audit shall (i) take place where Distributor maintains the Records (i.e. in its Santa Clarita, CA office) during customary business hours; (ii) not occur more frequently than once per year on reasonable written notice, (iii) not last more than thirty (30) days; and (iv) be at Producer's sole expense except as provided herein.  Statements shall be deemed conclusively correct and binding upon Producer and not subject to objection, claim or arbitration for any reason as to the transactions reflected therein unless specific written objection is made and delivered to Distributor within the applicable twenty four (24) month period.  In the event an audit is not commenced within the time periods set forth herein, all items and accounts listed in a Statement are presumed correct, and Licensor waives any claim or cause of action based on any item or account in such Statement and may not institute legal action based on any item or account in such Statement or breach of contract.  The inclusion in a Statement of transactions or items which have appeared in a previous Statement shall not renew or extend the time for objections or the time within an action based on such transaction or item can be brought.  No period audited (or part thereof) by Licensor may be subsequently re-audited.

d.   To the extent any audit shall reveal inaccuracies or discrepancies, Producer shall inform Distributor of any claim with respect to such inaccuracies or discrepancies and, within sixty (60) days of request by Distributor, Producer shall supply Distributor with a copy of the relevant audit report upon which Producer's claim is based.  In the event such examination uncovers an undisputed deficiency in any amount owed by Distributor to Producer hereunder, Distributor shall within (20) business days pay Producer (a) said deficiency in full and (b) all actual out of pocket third party costs and expenses incurred by Producer in connection with such examination with such examination if the underpayment is more than 10%

9

or ten thousand dollars ($10,000) (whichever is greater) of the sums shown to be due in the period to which such examination and/or accounting relates. If Producers claim is not resolved amicably within the twenty four (24) month period set forth above, Producer may institute an action with respect to such claim, provided that such action is commenced within six (6) months after the expiration of said period.

11.  **Third Party Payments**. Producer has and will: (i) pay when due all residuals, participations, royalties, new use, re-use payments, all payments to any union or guild, and similar amounts now owing or owed in the future to any and all third parties including, grantors of underlying rights, directors, performers, producers, scriptwriters, composers, publishers, in respect of the Production; and (ii) obtain all synchronization, mechanical and master recording licenses relating to the Picture and any other material relating thereto ((i) and (ii) collectively referred to as, "Residuals and Royalties"). Such payments and licenses shall include use in all media in all territories comprising the Territory for the entire Term. Distributor shall not have any liability in respect of any of the foregoing.

12.  **Subsequent Productions**. Producer hereby grants to Distributor the exclusive first option to acquire the rights to distribute all theatrical motion picture sequels and prequels based on, adapted from or in any way derived from the Picture and/or any underlying rights upon which the Picture is based including the title thereof that Producer produces or for which Producer owns or controls distribution rights in the Territory (a "Subsequent Production"). In the event that Producer elects to produce or acquire distribution rights in a Subsequent Production, Producer shall forthwith notify Distributor in writing and Distributor shall have 10 business days from receipt of the notice to confirm whether it wishes to acquire the rights in and to such Subsequent Production and for which parts of the Territory. If Distributor notifies Producer that it wishes to acquire such rights, Producer and Distributor shall negotiate in good faith the fee/royalty structure and minimum guarantee ("Key Terms") for a further 10 business days. If Distributor fails to respond within the initial 10 business days or if Distributor and Producer do not agree the Key Terms within such subsequent 10 business day period, Producer shall be entitled to sell the Subsequent Production to third parties, provided that Producer shall not be entitled to sell such Subsequent Production to a third party where the Key Terms are more favourable to such third party than those last offered to Distributor without first offering such Key Terms to Distributor. Producer shall not alienate or otherwise dispose of its rights in any Subsequent Production for the primary purpose of circumventing the obligations of Producer to Distributor under this Paragraph 13.

13.  **Confidentiality**. Producer agrees that it will not disclose to any third parties (other than profit participants, auditors and that Producer's legal or financial advisors, who shall also agree to be bound by the terms of this section) the terms of this Agreement or any information concerning the business of Distributor.

14. **Termination; Remedies.**

    a.    Subject to written notice to Distributor and the expiration of a 10 business day cure period without a cure being effected (with such period commencing on the date on which such notice is delivered to Distributor) and (if applicable) the arbitration provisions of this Agreement, this Agreement may be terminated prior to the expiration of the Term by Producer if after 36 months from the initial release date of the Picture by Distributor (the "Release Date"), the aggregate Gross Receipts for the Picture do not exceed _ One Hundred Thousand_____ Dollars ($_100,000.00__) (the "Event of Default"). Distributor agrees that the Release Date shall be no later than_December 31,__2012. Upon such Event of Default, Producer shall be entitled by written notice to Distributor to terminate this Agreement and in the event of such termination by Producer, Distributor not shall have any further obligation whatsoever to Producer under or with respect to this Agreement and Distributor shall be entitled to: (i) a Distribution Fee from the exercise of the Rights on which Distributor was entitled to receive a Distribution Fee prior to such termination and any agreement which is an automatic extension or renewal from the exercise of the Rights on which Distributor receives a Distribution Fee; and (ii) a Distribution Fee from the exercise of the Rights for which the principal financial terms were negotiated by Distributor (but were not completed by Distributor as a result of the termination or expiration of this Agreement); and (iii) any unrecouped Distribution Costs and Interest incurred or committed by Distributor in accordance with this Agreement prior to the date of termination.

    b.    Unless otherwise set forth herein, Producer shall not have a right to terminate this agreement. The sole remedy available in the event that Distributor fails to meet its obligations and commitments hereunder is an action at law for damages under the terms of this Agreement. In the event Distributor is in breach of the terms of this Agreement, the rights and remedies of Producer shall be limited to the right (if any) to recover damages (which Producer acknowledges is an adequate remedy) and in no event shall Producer be entitled by reason of such breach to enjoin or restrain the exhibition, distribution, advertising, exploitation or marketing of the Picture. Distributor shall not be liable to Producer for damages of any kind arising out of or in connection with any alleged or actual breach of this Agreement occurring or accruing before Distributor has had reasonable notice of, and opportunity to cure, such alleged or actual breach. Thirty (30) days from the date of receipt of such notice shall be considered a reasonable cure period for purposes hereof.

15. **Notices.** All notices hereunder shall be given in writing. Notices may be given by registered or certified mail, prepaid and return receipt requested, overnight courier service, personal delivery or fax (provided a confirming copy is sent concurrently

11

by mail). Notices shall be deemed received seven days after the date mailed, one day after the date deposited in the facilities of an overnight courier service or on the date delivered personally or by fax; provided that a notice of change of address shall not be deemed to have been given until actually received. The current addresses for notices are as follows:

to Distributor:                                    to Producer: *MARTIN KHODABAKKSHIAN*
FilmWorks Entertainment Inc.                       *15153 HERON HIDEAWAY CIRCLE*
PO BOX 2072                                         *WINTER GARDEN, FL 24787*
Santa Clarita, CA. 91386

Attention: Heidi Meier                             Attention: _____

                                                   with a courtesy copy to:

                                                   _____
                                                   _____
                                                   _____

                                                   Attention: _____

16.   **General**.

    a.   This agreement shall be governed by the laws of the State of California applicable to contracts entered into and fully to be performed therein. Any claim or dispute between the parties arising out of or relating to this agreement or the breach or performance thereof shall be resolved by arbitration pursuant to the Commercial Arbitration Rules of the American Arbitration Association in Los Angeles, California, which such rules are in effect at the time notice of arbitration is filed. The arbitrators shall have experience in the motion picture industry. The arbitrators shall be entitled to award any remedy including, subject to paragraph 15(b), injunctive relief. The prevailing party in any arbitration shall be entitled to receive its reasonable outside attorneys fees and costs. Subject to the foregoing, the parties agree to the sole jurisdiction of the state and federal courts located in Los Angeles, California to enter judgment upon any arbitration award or otherwise with respect to any action arising out of or relating to this agreement or the breach or performance thereof.

    b.   In the event of a bankruptcy of Producer, the right of Distributor to continue to exploit the Picture shall be protected and preserved by Producer. In the event of a bankruptcy case by or against the Producer the rights of the licensor and licensee therein shall be subject to Section 365(n) of the Bankruptcy Code (Title 11 of the United States Code) (the "Bankruptcy Code") and the parties acknowledge and agree that the amounts paid to the Producer pursuant to this Agreement shall constitute royalties under Section 365(n)(2)(B). The parties agree that, upon

12

execution and at all times thereafter, this Agreement is an executory contract governed by Section 365 of the Bankruptcy Code, and is to be treated for all purposes as a single, integrated arrangement. The license contemplated under this Agreement is a license of intellectual property under Section 101(35A) of the Bankruptcy Code

c.   Nothing contained in this agreement shall be deemed to constitute a partnership or any other legal relationship other than that of producer and independent distributor and neither Producer or Distributor shall do or permit to be done anything whereby one may be represented as a partner or agent of the others.

d.   With the exception of an assignment for the purposes of financing, or to a corporation owned by, owning or acquiring substantially all of the stock or assets of Producer, Producer may not assign this agreement, in whole or in part, without the prior written consent of Distributor and any such purported assignment shall be void. Distributor may assign, sublicense or transfer all or any part of Distributor's rights and obligations under this Agreement. This Agreement shall be binding upon and inure to the benefit of Distributor's respective licensees, successors and assigns.

e.   This agreement sets out the entire agreement between the parties relating to the subject matter thereof; all prior negotiations and understandings are merged herein. This agreement may not be modified or any provision waived except by written agreement signed by both parties. Each party acknowledges that in entering into this agreement it is not relying upon any representations of the other except as set forth herein.

f.   No waiver by any party of any breach hereof shall be deemed a waiver of any preceding, continuing or succeeding breach of that or any other breach hereof.

g.   This agreement may be executed in one or more counterparts, each of which shall constitute an original hereof and which together shall constitute one agreement.

h.   Section headings are for convenience only and shall not be deemed a part or used in the construction of this agreement.

i.   Each party's rights and remedies herein shall be cumulative and the exercise of any right or remedy shall not limit any other right or remedy hereunder, at law or in equity.

j.   If any provision hereof is deemed to be illegal or unenforceable, then the remainder of the provisions shall be deemed to continue in full force and effect, and the illegal or unenforceable provision shall be deemed modified

13

in such a way that its intent is nevertheless complied with to the fullest extent possible.

k. All parties shall execute and deliver such other documents or instruments as may be necessary or desirable to evidence, give effect to or confirm this agreement, and any of the terms and conditions hereof.


FilmWorks Entertainment Inc.
Heidi Meier – President


By:_____          By:_____
Its:__President_____          Its:_PRODUCER - MARTIN KHDRBAKHSHIAN_

14

EXHIBIT A

SHORT FORM ASSIGNMENT AND POWER OF ATTORNEY

For good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the undersigned ("Assignor") hereby sells, assigns, transfers, and sets over unto FilmWorks Entertainment Inc. and its successors, licensees, and assigns (collectively, "Assignee") the exclusive distribution rights in and to the below-entitled Picture and any and all parts or elements thereof, throughout the Territory during the Term (as such terms are defined below), as more particularly set forth and subject to the terms and conditions of the agreement (the "Agreement") dated as of __June 27,_____2012 between Assignor and Assignee in connection with the Picture.

Picture: ____Breathe_____

Territory: ___The Universe_____

Term:  Ten (10) years

Distribution rights granted (as all of the below terms are defined in the Agreement):

Theatrical Rights __X_____     Non-Theatrical Rights __X___     Videogram Rights _X____
Television/IPTV Rights_X___     VOD/SVOD/PPV Rights ___X___ Digital Rights ___X_____
Mobile Rights ___X_____Other Ancillary Rights ___X_____

Assignor agrees to obtain or cause to be obtained copyrights and renewals of all copyrights in the Picture, and hereby assigns the aforesaid rights in the Picture under said copyrights to Assignee; and should Assignor fail to do any of the foregoing, Assignor hereby appoints Assignee as its attorney-in-fact to do all such acts and to execute, deliver, file, register and record all such documents, in the name and on behalf of Assignor, as Assignee may deem necessary or proper to accomplish same, which appointment is coupled with an interest and irrevocable.

Assignee is also hereby empowered and authorized to bring, prosecute, defend, and appear in suits, actions and proceedings of any nature under or concerning all copyrights in the Picture and all renewals thereof, or concerning any infringement thereof or any of the rights granted herein, in its own name or that or the copyright proprietor, and at its option Assignee may join Assignor or such copyright proprietor as a party plaintiff or defendant in any such suit, action or proceeding.

Dated:   6/28/2012

_____
("Assignor")
Print Name: MARTIN KHODABAKHSHIAN     Title: DIRECTOR /PRODUCER "BREATHE"

15

EXHIBIT A

SHORT FORM ASSIGNMENT AND POWER OF ATTORNEY

For good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the undersigned ("Assignor") hereby sells, assigns, transfers, and sets over unto FilmWorks Entertainment Inc. and its successors, licensees, and assigns (collectively, "Assignee") the exclusive distribution rights in and to the below-entitled Picture and any and all parts or elements thereof, throughout the Territory during the Term (as such terms are defined below), as more particularly set forth and subject to the terms and conditions of the agreement (the "Agreement") dated as of __June 27,_____2012 between Assignor and Assignee in connection with the Picture.

Picture: _____Breathe_____

Territory: ___The Universe_____

Term: Ten (10) years

Distribution rights granted (as all of the below terms are defined in the Agreement):

Theatrical Rights __X_____   Non-Theatrical Rights __X___   Videogram Rights _X____
Television/IPTV Rights_X__   VOD/SVOD/PPV Rights ___X___ Digital Rights ____X_____
Mobile Rights ___X_____Other Ancillary Rights ___X_____

Assignor agrees to obtain or cause to be obtained copyrights and renewals of all copyrights in the Picture, and hereby assigns the aforesaid rights in the Picture under said copyrights to Assignee; and should Assignor fail to do any of the foregoing, Assignor hereby appoints Assignee as its attorney-in-fact to do all such acts and to execute, deliver, file, register and record all such documents, in the name and on behalf of Assignor, as Assignee may deem necessary or proper to accomplish same, which appointment is coupled with an interest and irrevocable.

Assignee is also hereby empowered and authorized to bring, prosecute, defend, and appear in suits, actions and proceedings of any nature under or concerning all copyrights in the Picture and all renewals thereof, or concerning any infringement thereof or any of the rights granted herein, in its own name or that or the copyright proprietor, and at its option Assignee may join Assignor or such copyright proprietor as a party plaintiff or defendant in any such suit, action or proceeding.

Dated: _____

_____
("Assignor")
Print Name:_____   Title: _____

15

# EXHIBIT B

FREUND & BRACKEY LLP
Thomas A. Brackey (SBN 162279)
Joshua G. Zetlin (SBN 273086)
427 North Camden Drive
Beverly Hills, CA 90210
Tel: 310 247-2165
Fax: 310 247-2190

Attorneys for Petitioner,
    MARTIN KHODABAKHSHIAN

## AMERICAN ARBITRATION ASSOCIATION

| | |
|---|---|
| MARTIN KHODABAKHSHIAN, an individual, | Case No.: |
| Petitioner, | **DEMAND FOR ARBITRATION:** |
| vs. | **1. BREACH OF CONTRACT; AND** |
| FILMWORKS ENTERTAINMENT, INC., a California corporation; and DOES 1 through 25, | **2. DEMAND FOR ACCOUNTING** |
| Respondent. | |

Petitioner MARTIN KHODABAKHSHIAN ("Petitioner"), by and through his attorneys Freund & Brackey LLP, hereby demands arbitration of claims pursuant to the June 27, 2012 Distribution Agreement, against Respondent FILMWORKS ENTERTAINMENT INC. ("FilmWorks"):

## INTRODUCTION

1.      This Demand for Arbitration ("Demand") is brought to redress a textbook breach of contract dispute, in which a motion picture distributor ceased providing contractually owed accountings and payments to a filmmaker.

2.      The filmmaker, Petitioner, is a multiple Emmy Award winning television producer.  Among his many accomplishments, Petitioner produced and directed a documentary motion picture entitled "Breathe", which depicted a world-renowned freediver's attempts to break the free-diving world record (the "Film").

3.      After completing the Film, Petitioner sought out a distributor and eventually

entered into the written June 27, 2012 Distribution Agreement ("Contract"), to license the Film to FilmWorks for distribution. FilmWorks then proceeded to exploit the film in numerous media, including a lucrative license to Red Bull and a high profile broadcast on the National Geographic Channel.

4.    Despite acknowledging significant royalties owed to Petitioner, FilmWorks refused to pay the amounts rightfully due. Moreover, without any explanation or excuse, FilmWorks stopped sending Petitioner the quarterly accounting statements required under the Contract.

5.    In September 2014, Petitioner sent a formal notice of breach to FilmWorks. However, the notice remained unanswered and FilmWorks failed to cure the breaches asserted therein. By this Demand, Petitioner now merely seeks to rectify the damage caused by FilmWorks failure to perform its obligations under the Contract.

## THE PARTIES

6.    Petitioner MARTIN KHODABAKHSHIAN is a private individual who is, and at all relevant times has been, a resident of Orlando, Florida. Petitioner is currently in the business of directing and producing documentary programs for distribution via all media, including without limitation on various television channels.

7.    Respondent FILMWORKS ENTERTAINMENT INC. is, and at all times mentioned herein was, a corporation duly organized and existing under the laws of the State of California, which operates primarily out of Los Angeles County. Petitioner is an international distributor of narrative and documentary motion pictures.

8.    The true names and capacities of Respondents named in this action as DOES 1 through 25, inclusive, are unknown to Petitioner, who therefore sues them by such fictitious names. Petitioner will amend this Demand to set forth their true names and capacities when and if they are ascertained.

9.    Petitioner is informed and believes, and based thereon alleges, that said Respondents FilmWorks and DOES 1 through 25, inclusive, are each in some manner responsible for the wrongs alleged herein, and that at all times referenced herein each was

the agent, servant and/or employee of the other Respondents, who obtained financial benefit from those Respondents' acts and omissions, and each was acting within the course and scope of said agency and employment.

10.     Petitioner is informed and believes, and based thereon alleges, that at all relevant times herein, Respondents FilmWorks and DOES 1 through 25, inclusive, did aid, abet, participate in, contribute to, or benefit from the acts and behavior alleged herein and the damages caused thereby, and by their inaction ratified and encouraged such acts and behavior.

11.     Petitioner further alleges that Respondents FilmWorks and DOES 1 through 25, inclusive, had a non-delegable duty to prevent or cure such acts and the behavior described herein, which duty Respondents FilmWorks and DOES 1 through 25, inclusive, failed and/or refused to perform.

12.     There exists, and at all times mentioned herein, existed a unity of interest and ownership between the Respondents FilmWorks and DOES 1 through 25 herein such that any individuality and separateness between them has ceased, and each is the alter ego of the other.  Thus, adherence to the fiction of the separate existence of these individuals and entities as distinct from the other would permit an abuse of the corporate privilege, and would sanction a fraud and promote injustice.  As a proximate result of the abuse of the corporate privilege the knowledge of each entity Respondent should be imputed to the others and as such, all damages assessed against each entity Respondent should be assessed against the individual Respondents.

## JURISDICTION AND VENUE

13.     The American Arbitration Association ("AAA") in Los Angeles, California is a proper venue for this action because the dispute arises out of or relates to the Contract between the parties, which states in paragraph 16(a) that "Any claim or dispute between the parties arising out of or relating to this agreement or the breach or performance thereof shall be resolved by arbitration pursuant to the Commercial Arbitration Rules of the American Arbitration Association in Los Angeles California."

## **GENERAL ALLEGATIONS**

14.    In or about 2011, Petitioner directed and produced a documentary motion picture entitled "Breathe", concerning the exploits of a world-renowned free-diver (the "Film"), to which Petitioner owns all rights.

15.    Petitioner and FilmWorks entered into the written Contract, dated as of June 27, 2012, pursuant to which FilmWorks licensed the Film from Petitioner for domestic and international distribution through a variety of channels.  A true and correct copy of the Contract is attached hereto as Exhibit A

16.    The Contract provides that, after recouping its actual distribution costs and retaining a distribution fee, FilmWorks would remit the balance of gross receipts from exploitation of the Picture to Petitioner.

17.    Section 10 of the Contract requires FilmWorks to "make and deliver to Producer reports relating to the exploitation of the [Picture] setting forth statements of all Gross Receipts, Distribution expenses and Distribution Fees in connection with the exploitation of the [Picture]."  In Section 16, the Contract further specifies that, "The prevailing party in any arbitration shall be entitled to receive its reasonable outside attorneys fees and costs."

18.    On or about February 1, 2014, FilmWorks delivered to Petitioner a report, accounting for the Picture's paid sales and FilmWorks' recoupable expenses during the period of October to December 2013 (the "Q4 Report").  The report listed an "Amount Due Producer This Quarter" of $29,777.42.  A true and correct copy of this report is attached hereto as Exhibit B.

19.    Following its provision of the Q4 Report, FilmWorks failed to remit any portion of the $29,777.42 due to Petitioner.

20.    On or about September 4, 2014, FilmWorks made a partial payment of $5,012.00 to Petitioner, but failed to provide any accounting of its exploitation of the Picture during 2014.

21.     On or about September 30, 2014, Petitioner sent a formal notice of breach to FilmWorks via registered mail and email, demanding complete reporting and payment of all unpaid receipts collected by FilmWorks in connection with the Picture. Petitioner received no response to this correspondence.

22.     On or about October 22, 2014, Petitioner learned from a public advertisement that the Picture was scheduled to air on a nationwide television broadcast on the National Geographic Channel, under the title "Deep Dive". Petitioner received no notice from FilmWorks when National Geographic Channel acquired the right to broadcast the Picture, and potentially distribute it further, nor has Petitioner received any report from FilmWorks accounting for a sale of the Picture to National Geographic.

23.     Following broadcast of the Picture by the National Geographic Channel on October 26, 2014, FilmWorks verbally informed Petitioner that the National Geographic Channel paid a fee of $25,000.00 for its sub-licensing of the Picture, but offered no formal accounting to memorialize the sale. Petitioner is also informed and believes FilmWorks received additional fees in excess of $25,000.00 from other exploitations of the Picture during 2014, which include without limitation a license of the Picture's raw footage by Red Bull Australia. This undetermined amount, believed to be in excess of $50,000.00, is in addition to the outstanding $24,765.42 in gross receipts FilmWorks acknowledged as due to Petitioner from exploitation of the Picture in 2013.

24.     To date, FilmWorks has not provided any further accountings or payments. Accounted receipts of $24,765.42, along with Petitioner's share of additional gross receipts believed to be in excess of $50,000.00, remain unpaid by FilmWorks.

## FIRST CAUSE OF ACTION

### Breach of Contract - Against all Respondents

25.     Petitioner re-alleges and incorporates herein by reference each and every allegation in Paragraphs 1 through 24 above.

26.     The Contract constitutes a valid, binding, written contract between Petitioner and FilmWorks. Petitioner performed all obligations and conditions precedent under the

1   Contract to be performed on its part.

2       27.    FilmWorks has breached its contractual obligations to Petitioner under the

3   Contract by, at a minimum, failing to provide reports relating to the exploitation of the

4   Picture during 2014 and failing to remit Petitioner's portion of collected gross receipts of

5   the Picture.

6       28.    FilmWorks collected an amount in excess of an acknowledged $29,777.42 in

7   funds owed to Petitioner, and has only paid $5012.00, leaving an acknowledged unpaid

8   gross receipts balance of at least $24,765.42.  Petitioner is informed and believes the

9   actual balance owed to Petitioner is at least $74,765.42.

10       29.    As a direct and proximate result of FilmWorks' breach, Petitioner has

11   suffered, and continues to suffer, damages in a sum exceeding the jurisdictional minimum

12   of the Court, but at least $74,765.42, such sum to be precisely determined according to

13   proof at trial.  Petitioner will amend or seek leave of Court to amend this Complaint to

14   state the precise amount of such damages when the same has been ascertained.

15                  **SECOND CAUSE OF ACTION**

16                     **For Accounting**

17               **(Against ALL RESPONDENTS)**

18       30.    Paragraphs 1 through 29 are incorporated by reference as though fully set

19   forth herein.

20       31.    Pursuant to the Contract, Petitioner is entitled to receive seventy percent

21   (70%) of all gross receipts of the Picture, during the term of the Contract.

22       32.    Petitioner is informed and believed and based thereon alleges that

23   Respondent has derived and received significant income, profit and other monetary

24   benefits in connection with its exploitation of the Picture during the term of the Contract,

25   for which Petitioner has not been paid its portion of gross receipts.

26       33.    As a result of Respondents' actions, or lack thereof, Petitioner has been

27   damaged in an amount to be proven after an accounting has been conducted.  Accordingly,

28   Petitioner hereby demands an accounting of all of Respondents books and records related

1   to the facts and circumstances alleged in this Demand in order to determine the sums

2   rightfully due to Petitioner.

3

### PRAYER FOR RELIEF

4

5       WHEREFORE, Petitioners pray for judgment against Respondents, and each of

6   them, as follows:

### ON THE FIRST CAUSE OF ACTION

7

8       1.     For actual damages in an amount to be determined according to proof at

9   arbitration, but in no event less than $100,000.00;

10      2.     For interest at the maximum legal rate;

11      3.     For Petitioner's attorneys' fees and costs of the suit herein; and

12      4.     For such other and further relief as the Court may deem just and proper.

### ON THE SECOND CAUSE OF ACTION

13

14      1.     For a full and complete accounting of all Respondents' financial records

15   relating to the Picture and distribution of the full amounts due and owing to Petitioner from

16   the exploitation of the Picture during the term of the Contract; and

17      2.     For such other and further relief as the Court may deem just and proper.

18

19   Dated: January 13, 2015            FREUND & BRACKEY LLP

20

21                          By: _____

                               Thomas A. Brackey,

22                          Joshua G. Zetlin

                         Attorneys for Petitioner

23                          MARTIN KHODABAKHSHIAN

24

25

26

27

28

**EXHIBIT A**

# DISTRIBUTION AGREEMENT

AGREEMENT dated as of ___June 27, 2012___ between FilmWorks Entertainment Inc. ("Distributor"), and ___*Ciaessakumias*___("Producer") regarding the distribution of a theatrical motion picture entitled "_Breathe ___" (the "Picture"), produced by Producer.

1. **Condition Precedent.** This agreement shall be subject to the following conditions precedent:

   a. Producer's and Distributor's execution of this Agreement; and

   b. Distributor's receipt and approval of the Rights Materials (as defined in Schedule A hereto).

   No such acceptance by Distributor shall be deemed to relieve Producer of any of its other obligations under this Agreement, including without limitation the representations, warranties, and indemnification provisions hereof.

2. **Grant of Rights.**

   a. Producer hereby licenses to Distributor the Rights in the Picture in the Territory during the Term (as such terms are defined below).

   b. As used herein, the following terms shall have the following meanings:

      i. The "Rights" means the exclusive right to distribute, subdistribute, exhibit, rent, lease, license, transmit, retransmit, broadcast, advertise, publicize, promote and otherwise exploit the Picture in all languages (subtitled, dubbed and/or parallel tracked) by any means and in any medium now known or hereafter devised, including without limitation theatrically, non-theatrically, by means of television (including without limitation free, pay, cable, pay per view and satellite) by means of home video devices (including without limitation videocassette, videodisc, DVD, Blu-Ray, HD-DVD, video on demand and near video on demand), wireless, digital, mobile, all means of electronic transmission and on the Internet. Without limiting the foregoing, the Rights shall include the right, and to grant others the right, to edit the Picture to conform to censorship and time limitations in any part of the Territory.

      ii. The "Picture" means the theatrical motion picture entitled "_Breathe_" which is a new and original, not previously distributed or exploited, live action, sound and talking motion picture in color on 35mm film, DV, or HD, 30 to 120 minutes in duration with

stereo, or Dolby SR sound, recorded originally in the English language.

iii.   Additional Materials: Licensor will provide Distributor all such additional materials owned, controlled, and/or available to Licensor (including materials reasonable available from a third party), fully cleared and authorized by Licensor for Distributors' unrestricted use and exploitation as permitted hereunder, as Distributor may require for the preparation, distribution, and exploitation of the Picture hereunder, including without limitation all supplemental footage and materials related thereto that are owned, controlled by, and/or available to, Licensor such as bonus material, deleted scenes, outtakes, behind-the-scenes footage, screen tests, promotional films, trailers, production stills, production storyboards, animatics, concept drawings and production sketches.  The Picture will be deemed to include any and all such materials provided by Licensor to Distributor and any and all materials created or obtained by Distributor for purposes of exploiting any or all of the Rights Granted.

iv.   The "Territory" means the Universe

v.   The "Term" means 10 years commencing on Delivery of the Picture (as defined in section 3), and renewable, at Distributor's discretion, for successive and unlimited one year terms under the same terms and conditions of this Agreement.  At the end of the Term or upon earlier termination, the Distributor shall have a 6 month non-exclusive period in which it may sell all existing stock relating to the Picture on the terms provided herein (the "Sell Off Period").

vi.   Coterminous: Distributor retains the right to enter into coterminous arrangements, on customary terms and conditions, with third parties such that the expiration periods of such coterminous arrangements extend beyond the expiration of the Term of this Agreement.  Such coterminous arrangements will also comply with the rights befitting Distributor pursuant to this Agreement as established in the 'Grant of Rights' section.

vi.   Credits: Distributor shall receive a first position logo and first position presentation credit on screen and in the billing block of paid ads in the Territory, in form and substance as directed by Distributor. Distributor shall have the right to accord appropriate credits to any of its sub-distributors.  Distributor shall adhere to all credit obligations of which it is notified in writing; provided, however, that no casual or inadvertent failure by Distributor or any

2

failure by its sub-distributors shall constitute a breach hereof. Promptly following Distributor's receipt of written notice detailing, with reasonable specificity, a failure by Distributor to comply with its credit obligations, Distributor shall use commercially reasonable efforts to prospectively cure such failure on materials created after the date of such notice, provided that in no event shall Distributor be obligated to recall any materials (including prints, one-sheets, etc.) created prior to such notice. The Picture as delivered to Distributor shall contain all screen credits required by Producer, and, provided that Distributor does not alter such credits, Producer does hereby indemnify, hold harmless and defend Distributor in connection with any claims arising from such screen credits

3.   **Delivery.**  Producer shall make Delivery of the Picture no later than July 30, 2012. As used herein, "Delivery of the Picture" shall mean the complete delivery to Distributor of the elements set forth in the delivery schedule attached hereto (the "Schedule A"). Notwithstanding the foregoing, Producer undertakes to provide to the Distributor access to, and the right to use and exploit the following and shall use best efforts to ensure such access is at no cost (other than duplication and shipping and any applicable taxes): (i) all promotional and publicity materials (including menu and cover artwork, 5.1 original language printmaster, teasers, promos, trailers and stills) available to or created by Producer or a third party; and (ii) any bonus materials used or available for use ((i) and (ii) collectively referred to as, the "Bonus Materials").

    a.   Producer shall deliver picture with a minimum run time of 70 minutes or longer, unless otherwise approved by Distributor.

    b.   Producer shall deliver picture with original cut (version provided on screener) without alteration with the exception of exchange of music as agreed.

4.   **Producer's Representations and Warranties.**  Producer hereby represents and warrants as follows:

    a.   Producer is a Limited Liability company, or Corporation incorporated, organized and subsisting under the laws of its place of incorporation and is empowered to conduct its business in every jurisdiction in which it carries on business;

    b.   Producer has the right, power and authority to enter into this Agreement and to grant to Distributor the rights set forth herein.

    c.   Producer has not entered into and will not enter into any agreement nor has Producer incurred nor will Producer incur any liability or obligation that might interfere with Distributor's exploitation of the Picture or any of its

3

other rights hereunder.  Producer has not previously distributed or exploited the Picture nor has Producer granted the right to do so to any other party or entity.  The Picture and the Rights are not and will not be subject to any claims, liens or encumbrances.

d.     The completion date of the Picture is _2011_____.

e.     The Picture, all elements thereof and all of the materials and services rendered, furnished, or obtained by Producer hereunder shall be original and the exercise by Distributor of its rights hereunder will not violate or infringe upon the rights of any third party under the laws of copyright, trademark, privacy, publicity, defamation, moral rights or otherwise.

f.     Each agreement between Producer and a party rendering services or furnishing materials, facilities or rights in connection with the Picture provides that such agreement is freely assignable and that Producer is the sole owner of all right, title and interest, under copyright or otherwise, in and to the Picture, all such materials and rights and all of the results and proceeds of such party's services.  Each such agreement provides further that such materials, rights and results and proceeds shall be a work made for hire for Producer under United States copyright law, that such party assigns to Producer all of such party's right, title and interest, if any, under copyright or otherwise in and to such materials, rights and results and proceeds and that such party waives any "moral rights" or similar rights with respect to such materials, rights or results and proceeds.

g.     Producer has timely paid all wages, fees and other payments required to or for the benefit of parties rendering services or furnishing materials, facilities or rights in connection therewith.  Producer has made all withholdings required by law or by any applicable union or guild agreement ("Guild Agreement") from sums payable to such parties and has paid all taxes and employer contributions due in connection therewith.

h.     Producer has obtained from all parties rendering services or furnishing materials, facilities or rights in connection with the Picture, subject to limitations imposed by any Guild Agreement of which Producer gives written notice to Distributor, the right to exploit the Rights, including without limitation the right, throughout the universe in perpetuity, by any means and in any medium now known or hereafter devised and to use such party's name, voice, likeness and biographical material in and in connection with the advertising, publicizing and promotion of the Picture, in merchandising and commercial tie-ins relating thereto, for informational purposes and in general goodwill advertising.  Such rights shall be without condition or limitation.

4

i.     Distributor shall not incur any liability or obligation for Residuals and Royalties (as defined below) to any parties rendering services or furnishing materials, facilities or rights in connection with the Picture.

j.     The performing rights in any music used in the Picture are owned or licensed by Producer, in the public domain or controlled by performing rights societies in each territory in which the Picture is distributed.

k.     The Picture shall be protected by copyright throughout the world. Producer has registered the Picture for United States copyright. Producer hereby appoints Distributor as its attorney-in-fact for the purpose of completing, executing and submitting such registration forms and other documents as may be required in connection with copyright protection, which such appointment shall be deemed coupled with an interest and irrevocable.

5.     **Distributor's Representations and Warranties.** Distributor hereby represents and warrants to Producer as follows:

a.     Distributor is a Corporation incorporated, organized and subsisting under the laws of its place of incorporation and is empowered to conduct its business in every jurisdiction in which it carries on business;

b.     Distributor has the right, power and authority to enter into this Agreement.

6.     **Indemnity.** Each party (the "Indemnitor") hereby indemnifies and holds harmless the other (the "Indemnitee") from and against all loss, cost, damage or expense (including reasonable outside attorneys fees) incurred or suffered by the Indemnitee in a claim by a third party arising out of the Indemnitor's breach of any of its representations or warranties herein. The Indemnitee shall promptly notify the Indemnitor of any claim or action subject to indemnification. The Indemnitor shall assume the defense of such claim or action. The Indemnitee may participate in such defense by its own counsel at its own expense. The parties' representations, warranties and indemnities shall survive the expiration or termination of this Agreement.

7.     **Gross Receipts.** As used herein, "Gross Receipts" means all sums not subject to refund or credit actually received by Distributor from the exercise of the Rights when received and earned. Distributor shall be entitled to maintain reserves for returns of up to 15% for home video units sold for a period of 8 months following the DVD release.

8.     **Distribution Fee and Costs.**

a.     Distributor shall be entitled to retain 30% of Gross Receipts as a distribution fee ("Distribution Fee"). Distributor shall have sole control over the exploitation of the Rights. Distributor makes no representations

5

or warranties respecting the amounts, if any, to be earned from the distribution of the Picture. Subject to the foregoing, Distributor shall market, advertise, publicize and promote the Picture to the best of its ability consistent with sound business practice so as to maximize Gross Receipts.

9. **_Distribution Expenses:_**

a. "Distribution Expenses" means and includes all costs and expenses incurred in connection with the manufacture, production, distribution, marketing, advertising, exploitation and turning to account of the Picture and/or any of the Rights Granted of whatever kind, and include without limitation all of the following as applicable with respect to the Rights granted hereunder.

b. Distributor also agrees not to spend in excess of Thirty Thousand Dollars (US $_30,000.00_) in combined Distribution Marketing Costs, for the term of the Agreement, without prior written approval by Producer. For purposes of this Agreement, Distribution Marketing Costs are defined and limited to all costs incurred with the design and creation of artwork, photography, advertising, public relations activities, mastering, authoring and creation of any/all special features, editing, compressing, digitizing and producing materials as outlined in schedule "A". Specifically excluded from the Distribution Marketing Expense Costs, are all other expenses not previously defined above, including but not limited to manufacturing, replication, duplication, packaging, warehouse handling, outbound shipping, price stickering, carton labeling, and all other pick, pack and ship services as well as all merchandising costs; all costs of returns shipping, handling and processing and other expenses associated with exploitation of the Picture.

c. All costs of obtaining, manufacturing, preparing, creating and/or producing physical materials in connection with exploitation of the Picture and/or each of the Rights Granted, including without limitation all costs of duped and dubbed negatives, soundtracks, tapes, Videograms (including without limitation the creation, capture, compression, and authoring of Videogram masters and all costs of design, development, manufacture, production, replication, duplication and packaging of the Videograms), duplicating material and facilities and all other material manufactured for the use in connection with the Picture, and all costs of storing, shipping, and all other expenses connected therewith (including without limitation all costs of warehouse handling, outbound shipping, price stickering, carton labeling, and all other pick, pack and ship services); all merchandising costs; all costs of returns shipping, handling and processing; and all other expenses incurred in connection with the distribution of the Picture hereunder. Distributor may manufacture or

6

cause to be manufactured as many or as few duped negatives, positive prints, Videograms and/or other materials for use in connection with the Picture as Distributor, in its sole discretion, may consider advisable or desirable. If not supplied by Licensor, Distributor will have the right to advance the cost of producing any materials identified on the attached Schedule "A", including without limitation a 16:9 Digitbeta (or other approved format) master Videogram of the Picture, including without limitation the costs of creating and/or producing, authoring, capture and compression of any DVD bonus materials or dubbed masters not provided by Licensor. All costs of creating such materials not supplied by Licensor will be included in Distribution Expenses and will be recoupable by Distributor from Licensor Receipts or other monies otherwise payable to Licensor. Any production or creation of any Delivery Materials by Distributor will not be construed as a waiver by Distributor of any of Licensor's obligations to deliver any Delivery Materials hereunder, or a waiver of any of Distributors' rights or remedies related to Licensor's failure to fulfill its Delivery obligations.

d.      All costs of advertising, publicizing and/or exploiting the Picture by such means and to such extent as Distributor determines in its sole discretion, including without limitation all advertisements, press books, artwork, publicity materials, advertising accessories, and trailers, Videogram screeners, and all other pre- and post- release advertising and publicity, all so-called marketing development funds, retail placement fees, or charges, in-store marketing credits and allowances, in connection with the exploitation of the Picture and/or the Rights Granted.

e.      All other costs of preparing and delivering the Picture for distribution hereunder, including without limitation all costs incurred in connection with the production of foreign and/or domestic language versions of the Picture as applicable in the Territory, whether dubbed, subtitled, or otherwise, all costs of uploading, encoding, storing and delivering digital files for digital distribution, as well as any and all costs and expenses in connection with changing the title, re-cutting, re-editing or shortening or lengthening the Picture for release in the Territory or for exhibition on television or other media, or in order to conform to the requirements of censorship authorities, or for any other reason not in Distributors' control, as well as all costs in connection in or as part of Videograms of the Picture, and all costs of preparing such Videograms, devices and/or platforms, including without limitation the cost of creating menus and other navigational elements and designs in connection therewith.

f.      All third-party costs and expenses incurred in connection with the collection of Gross Receipts from exhibitors, sub-distributors, sub-licensees, retailers, and others in connection with the Picture.

g. All costs (including reasonable outside attorneys' fees), losses, damages, or liabilities suffered or incurred by Distributor in connection with: any action taken by Distributor (whether by litigation or otherwise) in copyrighting, protecting, and/or enforcing the Rights Granted; reducing or minimizing the matters referred to in (e) above, the collection of Gross Receipts; and other sums due Distributor from exhibitors, sub-distributors, retailers, and others relating to the distribution of exhibition of the Picture; preventing and/or recovering damages for unauthorized exhibition or distribution of the Picture, or any impairment of, encumbrance on or infringement upon, the Rights Granted; all third–party accounting and legal fees and costs incurred in connection with this Agreement; an allocable share attributable to the Picture of costs of prosecuting and defending actions under the antitrust laws and/or communication laws; and an allocable share attributable to the Picture of costs of auditing books and records of any sub-distributor, retailer or licensee.

h. The cost of all insurance paid or incurred by Distributor covering or relating to the Picture, including without limitation errors and omissions insurance and all insurance on negatives, positive prints, sound materials, Videograms, and other physical property, it being understood, however that Distributor shall not be obligated to take out or maintain any such insurance.

i. Expenses of transmitting to the United States any funds accruing to Distributor from the Picture in foreign countries and any discounts from such funds taken to convert such funds directly or indirectly to U.S. dollars.

j. An allocable share attributable to the Picture of royalties payable to manufactures of sound recording and reproducing equipment and dues and assessments of, and contributions by Distributor to, AMPTP, MPAA, MPEAA, the Academy of Motion Pictures Arts and Sciences and other trade associations or industry groups, but only for the purposes relating to the production, distribution, export, import, advertising, exploitation, and general protection of the motion picture.

10. **Allocation of Gross Receipts; Accounting and Audit.**

a. The Gross Receipts derived from the Picture shall be applied as follows: first, Distributor shall recoup its Distribution Costs; second, Distributor shall retain its Distribution Fee; and last, the balance shall be remitted to Producer. All payments hereunder by Distributor are subject to any withholding or deduction required by law, or government or tax authority regulation. To the extent the V.A.T. applies, it shall be in addition to all amounts set forth in this Agreement. In recouping its Distribution Costs,

8

Distributor may fully cross-collateralize Gross Receipts from exploitation of all the Rights throughout the Territory.

b.  Distributor shall make and deliver to Producer reports ("Reports") relating to the exploitation of the Rights setting forth statements of all Gross Receipts, distribution expenses and Distribution Fees in connection with the exploitation of the Rights.  Such Reports shall be provided to Producer quarterly for the first three years (within 60 days of the close of each quarter) and annually for the rest of the Term, provided Distributor shall not have to deliver Reports or account in respect of any accounting period after the initial two years if Distributor does not owe Producer any amounts hereunder.  Any share of Gross Receipts shown as due to Distributor on any such Report shall be paid within 15 days of said Report.

c.  Producer shall have customary right to audit the Distributor's financial records ('Records") relating to the Statement for a period of twenty four (24) months following issuance thereof.  Such audit shall (i) take place where Distributor maintains the Records (i.e. in its Santa Clarita, CA office) during customary business hours; (ii) not occur more frequently than once per year on reasonable written notice, (iii) not last more than thirty (30) days; and (iv) be at Producer's sole expense except as provided herein.  Statements shall be deemed conclusively correct and binding upon Producer and not subject to objection, claim or arbitration for any reason as to the transactions reflected therein unless specific written objection is made and delivered to Distributor within the applicable twenty four (24) month period.  In the event an audit is not commenced within the time periods set forth herein, all items and accounts listed in a Statement are presumed correct, and Licensor waives any claim or cause of action based on any item or account in such Statement and may not institute legal action based on any item or account in such Statement or breach of contract.  The inclusion in a Statement of transactions or items which have appeared in a previous Statement shall not renew or extend the time for objections or the time within an action based on such transaction or item can be brought. No period audited (or part thereof) by Licensor may be subsequently re-audited.

d.  To the extent any audit shall reveal inaccuracies or discrepancies, Producer shall inform Distributor of any claim with respect to such inaccuracies or discrepancies and, within sixty (60) days of request by Distributor, Producer shall supply Distributor with a copy of the relevant audit report upon which Producer's claim is based.  In the event such examination uncovers an undisputed deficiency in any amount owed by Distributor to Producer hereunder, Distributor shall within (20) business days pay Producer (a) said deficiency in full and (b) all actual out of pocket third party costs and expenses incurred by Producer in connection with such examination with such examination if the underpayment is more than 10%

9

or ten thousand dollars ($10,000) (whichever is greater) of the sums shown to be due in the period to which such examination and/or accounting relates. If Producers claim is not resolved amicably within the twenty four (24) month period set forth above, Producer may institute an action with respect to such claim, provided that such action is commenced within six (6) months after the expiration of said period.

11.   **Third Party Payments.** Producer has and will: (i) pay when due all residuals, participations, royalties, new use, re-use payments, all payments to any union or guild, and similar amounts now owing or owed in the future to any and all third parties including, grantors of underlying rights, directors, performers, producers, scriptwriters, composers, publishers, in respect of the Production; and (ii) obtain all synchronization, mechanical and master recording licenses relating to the Picture and any other material relating thereto ((i) and (ii) collectively referred to as, "Residuals and Royalties"). Such payments and licenses shall include use in all media in all territories comprising the Territory for the entire Term. Distributor shall not have any liability in respect of any of the foregoing.

12.   **Subsequent Productions.** Producer hereby grants to Distributor the exclusive first option to acquire the rights to distribute all theatrical motion picture sequels and prequels based on, adapted from or in any way derived from the Picture and/or any underlying rights upon which the Picture is based including the title thereof that Producer produces or for which Producer owns or controls distribution rights in the Territory (a "Subsequent Production"). In the event that Producer elects to produce or acquire distribution rights in a Subsequent Production, Producer shall forthwith notify Distributor in writing and Distributor shall have 10 business days from receipt of the notice to confirm whether it wishes to acquire the rights in and to such Subsequent Production and for which parts of the Territory. If Distributor notifies Producer that it wishes to acquire such rights, Producer and Distributor shall negotiate in good faith the fee/royalty structure and minimum guarantee ("Key Terms") for a further 10 business days. If Distributor fails to respond within the initial 10 business days or if Distributor and Producer do not agree the Key Terms within such subsequent 10 business day period, Producer shall be entitled to sell the Subsequent Production to third parties, provided that Producer shall not be entitled to sell such Subsequent Production to a third party where the Key Terms are more favourable to such third party than those last offered to Distributor without first offering such Key Terms to Distributor. Producer shall not alienate or otherwise dispose of its rights in any Subsequent Production for the primary purpose of circumventing the obligations of Producer to Distributor under this Paragraph 13.

13.   **Confidentiality.** Producer agrees that it will not disclose to any third parties (other than profit participants, auditors and that Producer's legal or financial advisors, who shall also agree to be bound by the terms of this section) the terms of this Agreement or any information concerning the business of Distributor.

14.     **Termination; Remedies.**

    a.     Subject to written notice to Distributor and the expiration of a 10 business day cure period without a cure being effected (with such period commencing on the date on which such notice is delivered to Distributor) and (if applicable) the arbitration provisions of this Agreement, this Agreement may be terminated prior to the expiration of the Term by Producer if after 36 months from the initial release date of the Picture by Distributor (the "Release Date"), the aggregate Gross Receipts for the Picture do not exceed _ One Hundred Thousand_____ Dollars ($_100,000.00__) (the "Event of Default"). Distributor agrees that the Release Date shall be no later than_December 31,__2012. Upon such Event of Default, Producer shall be entitled by written notice to Distributor to terminate this Agreement and in the event of such termination by Producer, Distributor not shall have any further obligation whatsoever to Producer under or with respect to this Agreement and Distributor shall be entitled to:  (i) a Distribution Fee from the exercise of the Rights on which Distributor was entitled to receive a Distribution Fee prior to such termination and any agreement which is an automatic extension or renewal from the exercise of the Rights on which Distributor receives a Distribution Fee; and (ii) a Distribution Fee from the exercise of the Rights for which the principal financial terms were negotiated by Distributor (but were not completed by Distributor as a result of the termination or expiration of this Agreement); and (iii) any unrecouped Distribution Costs and Interest incurred or committed by Distributor in accordance with this Agreement prior to the date of termination.

    b.     Unless otherwise set forth herein, Producer shall not have a right to terminate this agreement.  The sole remedy available in the event that Distributor fails to meet its obligations and commitments hereunder is an action at law for damages under the terms of this Agreement.  In the event Distributor is in breach of the terms of this Agreement, the rights and remedies of Producer shall be limited to the right (if any) to recover damages (which Producer acknowledges is an adequate remedy) and in no event shall Producer be entitled by reason of such breach to enjoin or restrain the exhibition, distribution, advertising, exploitation or marketing of the Picture.  Distributor shall not be liable to Producer for damages of any kind arising out of or in connection with any alleged or actual breach of this Agreement occurring or accruing before Distributor has had reasonable notice of, and opportunity to cure, such alleged or actual breach.  Thirty (30) days from the date of receipt of such notice shall be considered a reasonable cure period for purposes hereof.

15.     **Notices.**  All notices hereunder shall be given in writing.  Notices may be given by registered or certified mail, prepaid and return receipt requested, overnight courier service, personal delivery or fax (provided a confirming copy is sent concurrently

by mail).  Notices shall be deemed received seven days after the date mailed, one day after the date deposited in the facilities of an overnight courier service or on the date delivered personally or by fax; provided that a notice of change of address shall not be deemed to have been given until actually received.  The current addresses for notices are as follows:

to Distributor:
FilmWorks Entertainment Inc.
PO BOX 2072
Santa Clarita, CA. 91386

Attention: Heidi Meier

to Producer:
*MARTIN KHODABAKKSHIAN*
*15153 HERON HIDEAWAY CIRCLE*
*WINTER GARDEN, FL 24787*

Attention: _____

with a courtesy copy to:

_____
_____
_____

Attention: _____

16. **General**.

a.  This agreement shall be governed by the laws of the State of California applicable to contracts entered into and fully to be performed therein.  Any claim or dispute between the parties arising out of or relating to this agreement or the breach or performance thereof shall be resolved by arbitration pursuant to the Commercial Arbitration Rules of the American Arbitration Association in Los Angeles, California, which such rules are in effect at the time notice of arbitration is filed.  The arbitrators shall have experience in the motion picture industry.  The arbitrators shall be entitled to award any remedy including, subject to paragraph 15(b), injunctive relief.  The prevailing party in any arbitration shall be entitled to receive its reasonable outside attorneys fees and costs.  Subject to the foregoing, the parties agree to the sole jurisdiction of the state and federal courts located in Los Angeles, California to enter judgment upon any arbitration award or otherwise with respect to any action arising out of or relating to this agreement or the breach or performance thereof.

b.  In the event of a bankruptcy of Producer, the right of Distributor to continue to exploit the Picture shall be protected and preserved by Producer.  In the event of a bankruptcy case by or against the Producer the rights of the licensor and licensee therein shall be subject to Section 365(n) of the Bankruptcy Code (Title 11 of the United States Code) (the "Bankruptcy Code") and the parties acknowledge and agree that the amounts paid to the Producer pursuant to this Agreement shall constitute royalties under Section 365(n)(2)(B). The parties agree that, upon

12

execution and at all times thereafter, this Agreement is an executory contract governed by Section 365 of the Bankruptcy Code, and is to be treated for all purposes as a single, integrated arrangement. The license contemplated under this Agreement is a license of intellectual property under Section 101(35A) of the Bankruptcy Code

c. Nothing contained in this agreement shall be deemed to constitute a partnership or any other legal relationship other than that of producer and independent distributor and neither Producer or Distributor shall do or permit to be done anything whereby one may be represented as a partner or agent of the others.

d. With the exception of an assignment for the purposes of financing, or to a corporation owned by, owning or acquiring substantially all of the stock or assets of Producer, Producer may not assign this agreement, in whole or in part, without the prior written consent of Distributor and any such purported assignment shall be void. Distributor may assign, sublicense or transfer all or any part of Distributor's rights and obligations under this Agreement. This Agreement shall be binding upon and inure to the benefit of Distributor's respective licensees, successors and assigns.

e. This agreement sets out the entire agreement between the parties relating to the subject matter thereof; all prior negotiations and understandings are merged herein. This agreement may not be modified or any provision waived except by written agreement signed by both parties. Each party acknowledges that in entering into this agreement it is not relying upon any representations of the other except as set forth herein.

f. No waiver by any party of any breach hereof shall be deemed a waiver of any preceding, continuing or succeeding breach of that or any other breach hereof.

g. This agreement may be executed in one or more counterparts, each of which shall constitute an original hereof and which together shall constitute one agreement.

h. Section headings are for convenience only and shall not be deemed a part or used in the construction of this agreement.

i. Each party's rights and remedies herein shall be cumulative and the exercise of any right or remedy shall not limit any other right or remedy hereunder, at law or in equity.

j. If any provision hereof is deemed to be illegal or unenforceable, then the remainder of the provisions shall be deemed to continue in full force and effect, and the illegal or unenforceable provision shall be deemed modified

13

in such a way that its intent is nevertheless complied with to the fullest extent possible.

k.   All parties shall execute and deliver such other documents or instruments as may be necessary or desirable to evidence, give effect to or confirm this agreement, and any of the terms and conditions hereof.

FilmWorks Entertainment Inc.
Heidi Meier – President

By:_____          By:_____
Its:__President_____         Its:_PRODUCER - MARTIN KHADBAKHSHIAN_

14

EXHIBIT A

SHORT FORM ASSIGNMENT AND POWER OF ATTORNEY

For good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the undersigned ("Assignor") hereby sells, assigns, transfers, and sets over unto FilmWorks Entertainment Inc. and its successors, licensees, and assigns (collectively, "Assignee") the exclusive distribution rights in and to the below-entitled Picture and any and all parts or elements thereof, throughout the Territory during the Term (as such terms are defined below), as more particularly set forth and subject to the terms and conditions of the agreement (the "Agreement") dated as of __June 27,_____2012 between Assignor and Assignee in connection with the Picture.

Picture: ____Breathe_____

Territory: ___The Universe_____

Term:  Ten (10) years

Distribution rights granted (as all of the below terms are defined in the Agreement):

Theatrical Rights __X_____   Non-Theatrical Rights __X___   Videogram Rights _X____
Television/IPTV Rights_X__   VOD/SVOD/PPV Rights ___X___  Digital Rights ___X_____
Mobile Rights ___X_____Other Ancillary Rights ___X_____

Assignor agrees to obtain or cause to be obtained copyrights and renewals of all copyrights in the Picture, and hereby assigns the aforesaid rights in the Picture under said copyrights to Assignee; and should Assignor fail to do any of the foregoing, Assignor hereby appoints Assignee as its attorney-in-fact to do all such acts and to execute, deliver, file, register and record all such documents, in the name and on behalf of Assignor, as Assignee may deem necessary or proper to accomplish same, which appointment is coupled with an interest and irrevocable.

Assignee is also hereby empowered and authorized to bring, prosecute, defend, and appear in suits, actions and proceedings of any nature under or concerning all copyrights in the Picture and all renewals thereof, or concerning any infringement thereof or any of the rights granted herein, in its own name or that or the copyright proprietor, and at its option Assignee may join Assignor or such copyright proprietor as a party plaintiff or defendant in any such suit, action or proceeding.

Dated:  6/28/2012

("Assignor")
Print Name: MARTIN KHODABAKHSHIAN        Title: DIRECTOR/PRODUCER "BREATHE"

15

EXHIBIT A

SHORT FORM ASSIGNMENT AND POWER OF ATTORNEY

For good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the undersigned ("Assignor") hereby sells, assigns, transfers, and sets over unto FilmWorks Entertainment Inc. and its successors, licensees, and assigns (collectively, "Assignee") the exclusive distribution rights in and to the below-entitled Picture and any and all parts or elements thereof, throughout the Territory during the Term (as such terms are defined below), as more particularly set forth and subject to the terms and conditions of the agreement (the "Agreement") dated as of __June 27,_____2012 between Assignor and Assignee in connection with the Picture.

Picture: ____Breathe_____

Territory: ___The Universe_____

Term: Ten (10) years

Distribution rights granted (as all of the below terms are defined in the Agreement):

Theatrical Rights __X_____  Non-Theatrical Rights __X___  Videogram Rights _X____
Television/IPTV Rights _X__  VOD/SVOD/PPV Rights ___X___  Digital Rights ___X_____
Mobile Rights ___X____Other Ancillary Rights ___X_____

Assignor agrees to obtain or cause to be obtained copyrights and renewals of all copyrights in the Picture, and hereby assigns the aforesaid rights in the Picture under said copyrights to Assignee; and should Assignor fail to do any of the foregoing, Assignor hereby appoints Assignee as its attorney-in-fact to do all such acts and to execute, deliver, file, register and record all such documents, in the name and on behalf of Assignor, as Assignee may deem necessary or proper to accomplish same, which appointment is coupled with an interest and irrevocable.

Assignee is also hereby empowered and authorized to bring, prosecute, defend, and appear in suits, actions and proceedings of any nature under or concerning all copyrights in the Picture and all renewals thereof, or concerning any infringement thereof or any of the rights granted herein, in its own name or that or the copyright proprietor, and at its option Assignee may join Assignor or such copyright proprietor as a party plaintiff or defendant in any such suit, action or proceeding.

Dated: _____

_____
("Assignor")
Print Name:_____  Title: _____

15

**<u>EXHIBIT B</u>**

**FilmWorks**

## 4th QUARTER 2013 ROYALTY STATEMENT

**TITLE: BREATHE**

**PAID SALES:**

| SALES CATAGORIES | CURRENT PERIOD | PAID SALES TO DATE | |
|---|---|---|---|
| DVD REVENUE SHARE | | | |
| DVD SALES | $   2,036.71 | $   10,993.66 ↓ | RELEASE DATE: SEPT 18, 2012 |
| FREE & PAY TV | | | |
| PPV & VOD | | | |
| DIGITAL | $   6,222.50 | $   19,509.35 | |
| MOBILE/ANCILLARY/MISC | $   27.72 | $   112.95 | |
| INTERNATIONAL | $   30,011.45 | $   37,123.34 | |
| TOTAL SALES | $   38,298.38 | $   67,739.30 ↓ | |

| RECOUPABLE EXPENSES | CURRENT PERIOD | |
|---|---|---|
| (SEE DETAIL PAGE) | $   719.50 | ONLY SALES INVOICES PAID (CLEARED FUNDS) ARE CALCULATED FOR ROYALTY PAYMENT. UNCOLLECTED INVOICES ARE ROLLED INTO THE NEXT ROYALTY PERIOD UNTIL PAYMENT IS RECEIVED |

| | | |
|---|---|---|
| DVD ORDERS SHIPPING/FREIGHT | $   179.25 | |
| DVD REPLICATION @ $0.65 EA | $   155.35 | |
| DVD FULFILLMENT = $0.25 PER UNIT | $   59.75 | |
| DVD RETURNS HANDLING = $0.25 PER UNIT | $   2.50 | |
| TOTAL RECOUPABLES | $   1,116.35 | (PAGE 1 OF 2) |

**FilmWorks**

**4th QUARTER 2013 ROYALTY STATEMENT**

**TITLE: BREATHE**

| | | | |
|---|---|---|---|
| TOTAL SALES LESS RECOUPABLES | $ | 37,182.03 | |
| | | | |
| LESS PREVIOUS QTR UNRECOUPED EXPENSES | $ | - | |
| TOTAL SALES LESS CARRY OVER EXPENSES | $ | - | |
| | | | |
| DISTRIBUTION FEE = 15% | $ | 3,750.00 | *SPECIAL FEE FOR REDBULL $25,000 LICENSE ONLY |
| DISTRIBUTION FEE = 30% | $ | 3,654.61 | *FEE BASED ON $12182.03 IN INCOME (NON REDBULL) |
| | $ | 7,404.61 | |
| | | | |
| AMOUNT DUE PRODUCER THIS QUARTER | $ | 29,777.42 | |
| AMOUNT PAID TO PRODUCER TO DATE | | | $ 42,945.62 |
| | | | |
| MARKETING EXPENSE CAP TOTAL TO DATE | $ | 10,210.43 | |

(PAGE 2 OF 2)

## 4th QTR 2013 - BREATHE - SALES (PAID)

| Type | Num | Name | Sale | Qty | Sales Price | Amount |
|---|---|---|---|---|---|---|
| Invoice | 2275 | BREATHE | DVD | 3 | $ 8.99 | $ 26.97 |
| Invoice | 2279 | BREATHE | DVD | 5 | $ 8.99 | 44.95 |
| CREDIT | 2332 | BREATHE | RETURN | -1 | $ 8.99 | (8.99) |
| Invoice | 2285 | BREATHE | DVD | 4 | $ 8.99 | 35.96 |
| Invoice | 2296 | BREATHE | DVD | 4 | $ 8.99 | 35.96 |
| Invoice | 2311 | BREATHE | DVD | 12 | $ 8.99 | 107.88 |
| Invoice | 2317 | BREATHE | DVD | 14 | $ 8.99 | 125.86 |
| Invoice | 2324 | BREATHE | DVD | 5 | $ 8.99 | 44.95 |
| Invoice | 2337 | BREATHE | DVD | 10 | $ 8.99 | 89.90 |
| Invoice | 2345 | BREATHE | DVD | 5 | $ 8.99 | 44.95 |
| Invoice | 2354 | BREATHE | DVD | 5 | $ 7.99 | 39.95 |
| Invoice | 2361 | BREATHE | DVD | 11 | $ 8.99 | 98.89 |
| Invoice | 2376 | BREATHE | DVD | 30 | $ 8.99 | 269.70 |
| Invoice | 2397 | BREATHE | DVD | 12 | $ 8.99 | 107.88 |
| Invoice | 2406 | BREATHE | DVD | 11 | $ 8.99 | 98.89 |
| Invoice | 2424 | BREATHE | DVD | 10 | $ 7.99 | 79.90 |
| Invoice | 2426 | BREATHE | DVD | 3 | $ 8.99 | 26.97 |
| Invoice | 2435 | BREATHE | DVD | 16 | $ 8.99 | 143.84 |
| Invoice | 2445 | BREATHE | DVD | 9 | $ 8.99 | 80.91 |
| Invoice | 2450 | BREATHE | DVD | 16 | $ 7.99 | 127.84 |
| Invoice | 2473 | BREATHE | DVD | 30 | $ 8.99 | 269.70 |
| Invoice | 2489 | BREATHE | DVD | 8 | $ 8.99 | 71.92 |
| CREDIT | 2493 | BREATHE | RETURN | -9 | $ 7.99 | (71.91) |
| Invoice | 2497 | BREATHE | DVD | 2 | $ 8.99 | 17.98 |
| Invoice | 2509 | BREATHE | DVD | 1 | $ 8.99 | 8.99 |
| Invoice | 2523 | BREATHE | DVD | 12 | $ 8.99 | 107.88 |
| Invoice | 2548 | BREATHE | DVD | 1 | $ 8.99 | 8.99 |
| | | | DVD TOTAL | 229 | | $ 2,036.71 |
| Invoice | 2538 | BREATHE | INTL DIGITAL REVSHARE | | $ | 11.45 |
| Invoice | 2372 | BREATHE | INTL LICENSE - NATGEO | | $ | 5,000.00 |
| Invoice | 2468 | BREATHE | INTL LICENSE - RED BULL | | $ | 25,000.00 |
| Invoice | 2484 | BREATHE | MISC REVSHARE | | $ | 27.72 |
| Invoice | 2609 | BREATHE | DIGITAL REVSHARE | | $ | 6,222.50 |

# EXHIBIT C

## SETTLEMENT AGREEMENT AND MUTUAL GENERAL RELEASE

THIS SETTLEMENT AGREEMENT ("Agreement") is entered into this 5th day of August, 2015 by and between FilmWorks Entertainment Inc., a California corporation ("FilmWorks") on the one hand, and Martin Khodabakhshian , an individual ("MK"), on the other hand. FilmWorks and MK may hereinafter be jointly referenced as the "Parties".

### RECITALS

This AGREEMENT is entered into with reference to the following facts:

A.    WHEREAS, MK is a multiple Emmy Award-winning television producer who produced and directed a documentary motion picture entitled "Breathe", which depicted a world-renowned freediver's attempts to break the free-diving world record (the "Documentary"); and

C.    WHEREAS, MK and and FilmWorks entered into the written June 27, 2012 Distribution Agreement (the "Contract"), pursuant to which MK licensed the Documentary to FilmWorks for distribution in return for a portion of the proceeds from exploitation of the Documentary. A true and correct copy of the Contract is attached hereto as Exhibit A; and

D.    WHEREAS, FilmWorks exploited the Documentary in numerous media but failed to remit certain proceeds from such sales to MK as required by the Contract; and

G.    WHEREAS, on or about January 13, 2015, MK initiated an arbitration against FilmWorks before the American Arbitration Association with Case # 01-15-0002-4527 (the "Arbitration"), asserting claims for Breach of Contract and Demand For Accounting under the Contract; and

H.    WHEREAS, the Parties hereto desire to settle fully and finally their disputes and claims against each other, of whatever kind or nature, including without limitation the Arbitration; and

I.    WHEREAS, the Parties now wish to terminate the Contract, including the conveyance of rights in the Documentary to FilmWorks;

## REPRESENTATIONS and WARRANTIES

**A.    General Representations and Warranties:**  Each Party to this Agreement represents, warrants, and agrees as to him, her or itself as follows:

(i)    No Party to this Agreement has made any statement or representation to any other Party to this Agreement regarding any fact relied upon in entering into this Agreement, and each Party does not rely upon any statement, representation, or promise of any other Party (or of any representative or attorney of or for the other Party), in executing this Agreement, or in making the settlement provided for herein, except as expressly stated in this Agreement.

(ii)    Each party to this Agreement has made such investigation of the facts pertaining to this settlement and this Agreement and of all the matters pertaining thereto as it deems necessary.

(iii)    Each Party has read this Agreement and understands the contents hereof, and has executed this Agreement voluntarily and without duress or undue influence on the part of or on behalf of any other Party.

(iv)    Each Party has sought and received the advice of their independent counsel in connection with negotiating and entering into this Agreement.

(v)    Each term, including the recitals set forth at the outset of this Agreement is contractual and not merely a recital.

2

## AGREEMENT

NOW, THEREFORE, in reliance upon the Representations and Warranties made by the Parties herein, and in consideration of the mutual covenants and conditions set forth herein, the Parties agree as follows:

1. **Termination of Distribution Agreement.**

    1.1      The Distribution Agreement is hereby terminated and no longer of any force or effect. To the fullest extent permissible by law, any rights granted by MK to FilmWorks thereunder, including without limitation the license of the exclusive right to distribute, subdistribute, exhibit, rent, lease, license, transmit, retransmit, broadcast, advertise, publicize, promote and otherwise exploit the Documentary in all languages throughout the Universe, are hereby cancelled, rescinded and terminated. For clarity, upon full execution of this Agreement, FilmWorks shall no longer possess any rights whatsoever in or to the Documentary or the copyright therein. FilmWorks shall not represent, claim, assert or otherwise convey to any party that it possesses any license, rights, or other interest in or to the Documentary or the copyright therein.

    1.2      Not later than September 30, 2015, FilmWorks shall wind up all activities related to its distribution, sale and/or other exploitation of the Documentary, including without limitation, discontinuation of the sale of DVD versions of the Documentary and removal of the Documentary from digital distribution platforms such as iTunes and Amazon. For avoidance of doubt, in the event FilmWorks receives any payment in connection with the Documentary from any source whatsoever after execution of this Agreement, FilmWorks will, and shall not be deemed in Default (defined below) if, within five (5) business days of receiving such payment, FilmWorks provides a written accounting and remits any and all monies owed to MK, with any such proceeds to be supplemental to the Settlement Amount (defined below).

3



1.3     Within thirty (30) days of full execution of this Agreement, FilmWorks shall send to MK via UPS thirty (30) physical copies of the Documentary, with One Hundred Five Dollars ($105.00), representing the cost of such physical copies, deducted from the Settlement Amount (defined below) upon receipt of the physical copies by MK. FilmWorks shall donate its remaining inventory, including returns, of physical copies of the Documentary ("Inventory"), to a charitable cause of MK's choosing, at no cost to MK. MK shall select the charitable cause within thirty (30) days execution of this Agreement, and FilmWorks shall donate all Inventory by or before December 31, 2015.

## 2.     Transfer of rights.

2.1     FilmWorks hereby assigns, grants, conveys and transfers to MK any and all of its right, title and interest, including without limitation the copyright therein and all other rights of a like nature, in and to the Documentary and all component and related parts thereof. Film Works will execute, acknowledge and deliver any such further acts, deeds, assignments, transfers, conveyances, powers of attorney and assurances as may reasonably be required by MK to assign, transfer, set over, convey assure and confirm unto and vest in MK all right, title and interest in and to the Documentary.

2.2     FilmWorks hereby assigns, grants, conveys and transfers all right to payment in connection with the exploitation of the Documentary in any and all media, throughout the universe, to MK. Notwithstanding the foregoing, FilmWorks and MK acknowledge and agree that written agreement between Pipeline MPG and Mayfly S.P., dated November 19, 2012 and pertaining to the license of the Documentary for distribution in Poland (the "Mayfly Agreement"), shall remain in effect until conclusion of its term on November 18, 2019. For avoidance of doubt, with regard to the MayFly Agreement alone, FilmWorks will: (1) provide MK written accountings of all gross receipts received thereunder on a quarterly basis; (2) retain thirty percent (30%) of any gross receipts as a distribution fee; and (3) remit all remaining sums



4

to MK within five (5) days of receipt by FilmWorks, with any such proceeds to be supplemental to the Settlement Amount.

3.   **Settlement Payment.** In addition to Sections 1 and 2 herein, as remuneration for its unpaid debts, fees and interest. FilmWorks shall pay MK the sum of Seventy Two Thousand One Hundred Eighty-Six Dollars and Twelve Cents ($72,186.12) (the "Settlement Amount"), to be paid in full within twenty four (24) months of full execution of this Agreement, as follows:

   3.1   One Thousand Five Hundred Thirty Dollars and Fourteen Cents ($1,530.14), within five (5) business days of full execution of the Agreement (the "Initial Payment");

   3.2   The remainder of the Settlement Amount in monthly installments of not less than One Thousand Dollars ($1,000), each to be paid on or before the last day of each calendar month.

   3.3   All payments towards satisfaction of the Settlement Amount are to be made payable to "Freund & Brackey LLP Client Trust Account", and mailed to:

   > Freund & Brackey LLP
   >
   > 427 North Camden Drive.
   >
   > Beverly Hills, CA 90210

4.   **Dismissal of Arbitration.** Within ten (10) days of FilmWorks payment of the Initial Payment, MK shall dismiss the Arbitration without prejudice.

5.   **Release.** In consideration of the Parties entering into this Agreement and the covenants contained herein, and except as expressly set forth otherwise in this Agreement, the Parties do hereby generally and specifically release, forever discharge, and acquit one another, and their respective past and present affiliates, subsidiaries, officers, directors, partners, customers, suppliers, principals, employees, attorneys, insurers, agents, successors, heirs and assigns, jointly and individually, of and from, and covenant not to sue, for any and all claims, demands, obligations, losses, damages, causes of action, costs, expenses, attorneys' fees and liabilities of

5



any nature whatsoever, known and unknown, now existing or hereafter arising, contingent or

absolute, whether based on contract, tort, statutory or other legal or equitable theory of recovery,

that result from or are in connection with any and all acts and omissions of any kind directly or

indirectly arising from or in any way relating to the Documentary and the Arbitration.

6.     **Section 1542 Release.** Each party acknowledges that it is aware that it may hereafter

discover facts different from or in addition to what it now knows or believes to be true with

respect to the matters herein released, and it agrees that these releases shall be, and shall remain,

in effect in all respects as complete general releases as to the matters released, notwithstanding

any such different or additional facts. The parties acknowledge that they have been advised by

their respective counsel herein and are familiar with the provisions of section 1542 of the

California Civil Code, which provides that:

> **A GENERAL RELEASE DOES NOT EXTEND TO
> CLAIMS WHICH THE CREDITOR DOES NOT
> KNOW OR SUSPECT TO EXIST IN HIS OR HER
> FAVOR AT THE TIME OF EXECUTING THE
> RELEASE, WHICH IF KNOWN BY HIM OR HER
> MUST HAVE MATERIALLY AFFECTED HIS OR
> HER SETTLEMENT WITH THE DEBTOR.**

The parties, being aware of this statute, expressly waive any rights they may have under the

statute, as well as under any other statutes or common law principles of similar effect.

7.     **Security.**

7.1     Concurrently with the execution of this Agreement, the Parties shall execute the

Stipulated Award attached hereto as **Exhibit A**, to be filed with AAA. The Stipulated Award

will provide that the arbitrator in the Arbitration will retain jurisdiction over the Parties to

enforce this Agreement until performance in full of the terms of this Agreement. Immediately in

the event of any Default (as defined below) by FilmWorks of any of its obligations set forth in

6



Sections 1, 2 or 3 herein, MK shall have the right to execute on the Stipulated Award and pursue the relief deemed necessary to protect his rights as a prevailing party.

    **7.2**    Until FilmWorks pays the entire Settlement Amount to MK, FilmWorks grants MK a continuing security interest in and to all of FilmWorks property and assets, subordinate to only FilmWorks current debt to Swift Financial, which shall become a continuing first priority security interest following FilmWorks repayment of such loan on or before March, 2016. MK may take whatever steps necessary, including without limitation recording a UCC-1 Financing Statement, to perfect his security interest.

**8.**    **Default.**

    **8.1**    Should FilmWorks fail to perform any of its obligations under Sections 1, 2, or 3 herein, including without limitation timely payment of each monthly installment of the Settlement Amount, and remains uncured for five (5) business days after written notice by MK, FilmWorks shall be deemed in "Default" hereunder.

    **8.2**    Each and all of the rights and remedies provided for under this Agreement shall be construed as being cumulative and no one of them shall be deemed as exculsive of the others or of any right or remedy allowed by law or equity, and pursuit of any one remedy shall not be deemed to be an election of such remedy or a waiver of any other remedy. For avoidance of doubt, in the event of a Default by FilmWorks, in addition to whatever rights and remedies are available under this contract or at law, MK may immediately file the Stipulation of Judgment and FilmWorks may not act in any way to impair or obstruct MK's ability to do so.

**9.**    **No Release of Obligations and Representations Contained in This Agreement.**

Nothing contained in this Agreement shall operate to release or discharge the Parties, or their successors-in-interest, assigns, heirs, executors or administrators, from any claims, rights, or causes of action arising out of, relating to, or connected with the breach of any of the obligations or representations of the Parties contained in, and established by, this Agreement.

7

10.  **Confidentiality and Non-Disparagement.**

    **10.1**    The Parties agree that this Agreement and shall be kept confidential. The financial terms and provisions of this Agreement shall be deemed "Confidential Information" and shall be kept in the strictest confidence, the Parties and their respective representatives and advisors shall not discuss, disclose or otherwise reveal to any person or entity any Confidential Information. Furthermore, MK shall not directly or indirectly induce or influence any customer, client, distributor or other party that has a business relationship with FilmWorks to discontinue or reduce the extent of such business relationship. Notwithstanding, the Parties hereby acknowledge and agree that MK shall not be restrained, restricted or prohibited in any way from contacting, speaking, transacting, engaging and/or conducting business with any individuals and/or organizations, specifically including without limitation RedBull, National Geographic, Amazon, and iTunes, but that this shall not constitute an exception to the restrictions set forth above.

    **10.2**    Neither FilmWorks nor MK shall make, participate in the making of, or knowingly encourage any other person to make any public or private statement, whether written or oral, that disparages, defames, is derogatory about, or misrepresents the other Party.

11.  **Integration and Modification.**    This Agreement, including the documents referenced herein, sets forth all promises, covenants, agreements, conditions and understandings of the Parties with respect to the subject matter hereof and, supersedes all prior and contemporaneous negotiations, representations, understandings, inducements, conditions, and agreements, express or implied, with respect to the subject matter thereof except as set forth herein. This Agreement may not be modified, amended, altered or supplemented except by a written instrument signed by all Parties hereto.

8



12.  **No Admission of Liability.** The Parties expressly agree and acknowledge that this Agreement shall not constitute or be construed as an admission of liability, fault or wrongdoing for any purpose whatsoever, but, to the contrary, represents a compromise of all pending claims, which are expressly contested, disputed and denied. Neither the execution and delivery of this Agreement, nor any actions taken by any Party pursuant to this Agreement, shall be deemed to constitute any acknowledgment of wrongdoing or liability on the part of any Party to this Agreement, nor shall this Settlement Agreement be admissible to prove liability for, or the validity of, any claims which in any way arise out of or relate to the subject matter of this Agreement.

13.  **Authority and Competence to Execute Agreement.** Each individual signing this Agreement warrants and represents that he/she has the full authority to execute the Agreement on behalf of the party for which he/she so executes it and he/she is acting within the express scope of such authority.

14.  **Binding Effect.** This Settlement Agreement shall be binding upon, and shall inure to the benefit of, the Parties hereto and their respective heirs, estates, assigns, predecessors, successors, affiliates or other person or entity related thereto, except as set forth herein.

15.  **Joint Participation in Preparation of Agreement.** The Parties hereto participated jointly in the negotiation and preparation of this Agreement, and each party has had the opportunity to obtain the advice of legal counsel and to review, comment upon, and redraft this Agreement. Accordingly, it is agreed that no rule of construction shall apply against any party or in favor of any party. This Agreement shall be construed as if the Parties jointly prepared this Agreement, and any uncertainty or ambiguity shall not be interpreted against any one party and in favor of the other.

9



16.   **Notification.** Any and all notices required by this Agreement shall be made by overnight receipted courier with a copy by electronic mail to each of the addresses below or such change(s) of address as are noticed pursuant hereto:

**MK:**

Thomas A. Brackey, Esq.
Freund & Brackey, LLP
427 North Camden Drive
Beverly Hills, CA 90210
Telephone: (310) 247-2165
Email: tbrackey@freundandbrackey.com

**FilmWorks:**

Heidi Meier
FilmWorks Entertainment Inc.
39252 Winchester Rd. Suite 107-227
Murrieta, CA 92563
Telephone: (800) 399-9251
Email: hmeier@filmworksent.com

Notices shall be deemed given on the date delivered by overnight courier in accordance with the terms hereof.

17.   **Survivability.** All covenants and agreements contained herein shall survive the execution of this Settlement Agreement.

18.   **Severability.** If any provision of this Settlement Agreement is held to be illegal, invalid or unenforceable under present or future laws effective during the term of this Settlement Agreement, such provision shall be fully severable. In lieu thereof, the Parties agree that there shall be added a provision as similar in terms and effect to such illegal, invalid or unenforceable provision as possible.

19.   **No Waiver.** No waiver of any provision of this Settlement Agreement shall be valid unless in writing and signed by all Parties. The failure of any Party at any time to insist upon strict performance of any condition, promise, agreement or understanding set forth in this

10



Settlement Agreement shall not be construed as a waiver or relinquishment of the right to insist upon strict performance of the same condition, promise, agreement or understanding at a future time.

20.    **Governing Law.** This Agreement shall be governed, construed, interpreted, and enforced in accordance with the substantive law of the State of California applied to agreements made and to be performed wholly within California without giving effect to the principles of conflicts of laws.

21.    **Dispute Resolution.** The parties agree that any controversy or claim arising out of or in any way relating to this Agreement shall be settled by final and binding arbitration in accordance with the JAMS Streamlined Arbitration Rules and Procedures in effect at the time the claim is made, and a judgment upon any award rendered by the arbitrator may be entered in any court having jurisdiction. Such arbitration shall be filed with JAMS and heard by a single arbitrator in Los Angeles, California. The prevailing party shall be entitled to recover its costs and expenses incurred thereby, including, but not limited to, reasonable attorneys' fees and arbitration fees.

22.    **Headings.** All headings and captions contained in this Agreement are for reference purposes only and shall not affect in any way the meaning or interpretation of this Agreement.

23.    **Counterparts.** The Parties may execute this Agreement in counterparts, each of which shall be deemed an original, and all of which together constitute but one and the same instrument. The Parties agree, however, that they shall cause two, duplicate original copies to be fully executed.

24.    **Attorneys' Fees and Costs.** Each party to this Agreement shall bear its own attorneys' fees and costs.

25.    **No Representations.** Except for the representations contained in this Agreement, each Parties, respectively, represents and acknowledges that in executing this Agreement, he/she/it has

11



not relied upon any representation or statement not set forth herein made by anyone with regard to the subject matter, basis or effect of this Agreement.

IN WITNESS WHEREOF, each of the undersigned confirms that they have read the Settlement Agreement, that they fully understand all of its terms, and that they execute it voluntarily in the full knowledge of its significance on the date set forth herein.

AGREED and APPROVED:

Martin ~~Khodabkahshian~~ *KHODABAKHSHIAN MK*

FILMWORKS ENTERTAINMENT, INC.

by: *HEIDI MEIER*
its: *PRESIDENT - FILMWORKS ENTERTAINMENT*

12

# EXHIBIT A

FREUND & BRACKEY LLP
Thomas A. Brackey (SBN 162279)
Joshua G. Zetlin (SBN 273086)
427 North Camden Drive
Beverly Hills, CA 90210
Tel: 310 247-2165
Fax: 310 247-2190

Attorneys for Petitioner,
    MARTIN KHODABAKHSHIAN

## AMERICAN ARBITRATION ASSOCIATION

| | |
|---|---|
| MARTIN KHODABAKHSHIAN, an individual, | Case No.: 01-15-0002-4527 |
| Petitioner, | **STIPULATED AWARD** |
| vs. | |
| FILMWORKS ENTERTAINMENT, INC., a California corporation; and DOES 1 through 25, | |
| Respondent. | |

///
///
///
///
///
///
///
///
///
///
///
///

1      Pursuant to the Settlement Agreement by and between Petitioner MARTIN

2    KHODABAKHSHIAN ("MK") on one hand, and Respondent FILMWORKS

3    ENTERTAINMENT, INC., ("FilmWorks") on the other hand, IT IS HEREBY

4    ADJUDGED, ORDERED, and DECREED as follows:

5        1.    That MK shall have an award in its favor on his Complaint in the sum of

6    $100,000.00, less the sum of $_____ payments made pursuant to the Settlement

7    Agreement, for a new award amount of $_____; and

8        2.    That AAA shall retain continuing jurisdiction over the parties to enforce the

9    terms and conditions of the Settlement Agreement between MK and FilmWorks until

10   performance in full of its terms.

11

12   Dated: _____

13                                         Arbitrator Lawrence Mortorff

14

15   SO STIPULATED:

16   By:_____        Dated: 8/11/15

17        Thomas A. Brackey II,

18        Attorney for Petitioner
           MARTIN KHODABAKHSHIAN

19

20   By:_____        Dated: 8-5-2015

21        Heidi Meier,
           Authorized signatory on behalf of

22        Respondent FILMWORKS
           ENTERTAINMENT, INC.

23

24

25

26

27

28

# EXHIBIT D

**AMERICAN ARBITRATION ASSOCIATION**
**Commercial Arbitration Tribunal**

---

Re: Case No. 01-15-0002-4527

In the Matter of the Arbitration between
     Martin Khodabakhshian,
         Claimant
  Vs
     Film Works Entertainment, Inc. a California corporation,
     and  DOES 1 through 25,
         Respondents

---

## STIPULATED AWARD

I, THE UNDERSIGNED ARBITRATOR, having been designated in accordance with the Rules and Regulations of the American Arbitration Association, pursuant to the arbitration provision in the Agreement entered into between the above-named parties, and having been duly sworn, and having duly read the Settlement Agreement and proposed Stipulated Award approved by the Parties, do hereby AWARD as follows:

The jurisdiction of AAA in this matter arises from the arbitration clause in the Distribution Agreement dated June 27, 2012, which was signed by the Parties. The matter was filed with the American Arbitration Association on January 13, 2015 and this Arbitrator was installed On March 26, 2015.

There were several telephonic hearings in the matter, with Order One dated April 17, 2105 and Order Two dated June 16, 2015 issued by this Arbitrator, The Hearing itself was scheduled for August 18, 2015 but cancelled by the Parties the week prior to the Hearing date as a result of the signed Settlement Agreement between the Parties dated as of August 5, 2015 filed with AAA and this Arbitrator on August 11, 2015 (including a draft of the above mentioned proposed Stipulated Award dated August 14, 2015 signed by Heidi Meier for Respondents).

**STIPULATED AWARD**

1. The signed Settlement Agreement between the Parties dated as of August 5, 2015 is hereby approved. This Award is rendered in accordance with the provisions thereof authorizing the entry of a stipulated award. Pursuant to the terms thereof, the rights and remedies set forth therein are hereby affirmed and awarded to the Claimant. This Award is rendered in accordance with the provisions thereof authorizing the entry of a stipulated award.
2. Pursuant to the Parties' Settlement agreement, Claimant shall have an award in his favor in the sum of $100,000.00 and accordingly, Respondent is liable to Claimant in such amount, payable pursuant to the terms of the Settlement Agreement.
3. The fee of the Arbitrator in the amount of $ $4,800.00 shall be borne equally by the Parties. The other administrative fees of the AAA, totaling $1,750, shall be borne equally between the Parties. Therefore, Respondent shall reimburse Claimant the additional amount $875, representing that portion of said fees and expenses in excess of the apportioned costs previously incurred by Claimant.

This Award resolves all issues submitted for decision in this proceeding, and is in full settlement of any and all claims submitted to this Arbitration.  All claims not expressly raised herein are hereby denied.

_____        _____

August 25, 2015                   Lawrence P. Mortorff, AAA Arbitrator

# EXHIBIT E

## FREUND & BRACKEY LLP

LAWYERS

427 NORTH CAMDEN DRIVE
BEVERLY HILLS, CALIFORNIA 90210
TELEPHONE (310) 247-2165
FACSIMILE (310) 247-2190

August 12, 2016

## VIA ELECTRONIC AND FIRST CLASS MAIL

*hmeier@filmworksent.com*

Ms. Heidi Meier
FilmWorks Entertainment, Inc.
39252 Winchester Road, Suite 107-227
Murrieta, CA 92563

   Re: *MARTIN KHODABAKHSHIAN VS FILMWORKS ENTERTAINMENT, INC., ET AL.* (AAA
     Case No. 01-15-0002-4527)

Dear Ms. Meier:

I write to meet and confer regarding FilmWorks Entertainment, Inc.'s ("FilmWorks") failure to comply with
its obligations under the Settlement Agreement with Martin Khodabakhshian ("Khodabakhshian") dated
August 15, 2015 (the "Settlement Agreement").   Despite receiving written Notices of Breach and an ample
opportunity to cure, FilmWorks' remains in default of the Settlement Agreement. Accordingly, my client
now intends to file a motion to confirm its Stipulated Award, issued under the Settlement Agreement on
August 25, 2016 and executed by Lawrence P. Mortorff, AAA Arbitrator (the "Stipulated Award"), in
federal court and thereafter pursue all collection mechanisms available under federal law.

Please accept this as my client's attempt to meet and confer pursuant to Local Rule 7-3 of the Central District
of California regarding the motion to confirm the Stipulated Award. Please contact me forthwith to discuss a
possible resolution of this matter.  Do know that Mr. Khodabakhshian intends to protect diligently his rights.
Accordingly, if we do not hear form you within the next (5) days, we will move to confirm the Stipulated
Award in federal court and thereafter initiate judgment enforcement efforts against you.

This letter is not intended to be a complete statement of the facts or law relevant to this matter.
Furthermore, nothing contained herein shall constitute an admission of any kind whatsoever, nor shall it
constitute a waiver of any rights or remedies at law, in equity, or otherwise, all of which are hereby
expressly reserved.

        Respectfully yours,

        FREUND & BRACKEY LLP

        Jugpreet S. Mann
        Attorneys for Petitioner,
        MARTIN KHODABAKHSHIAN

JSM:st

# EXHIBIT F

Secretary of State Main Website          **Business Programs**     Notary & Authentications     Elections     Campaign & Lobbying

**Business Entities (BE)**

Online Services
- **E-File Statements of Information for Corporations**
- **Business Search**
- **Processing Times**
- **Disclosure Search**

**Main Page**

**Service Options**

**Name Availability**

**Forms, Samples & Fees**

**Statements of Information**
(annual/biennial reports)

**Filing Tips**

**Information Requests**
(certificates, copies & status reports)

**Service of Process**

**FAQs**

**Contact Information**

Resources
- **Business Resources**
- **Tax Information**
- **Starting A Business**

Customer Alerts
- **Business Identity Theft**
- **Misleading Business Solicitations**

# Business Entity Detail

Data is updated to the California Business Search on Wednesday and Saturday mornings. Results reflect work processed through Friday, August 19, 2016. Please refer to **Processing Times** for the received dates of filings currently being processed. The data provided is not a complete or certified record of an entity.

| Entity Name: | FILMWORKS ENTERTAINMENT INC. |
|---|---|
| Entity Number: | C3238209 |
| Date Filed: | 12/01/2009 |
| Status: | FTB SUSPENDED |
| Jurisdiction: | CALIFORNIA |
| Entity Address: | 39252 WINCHESTER RD, SUITE 107-227 |
| Entity City, State, Zip: | MURRIETA CA 92563 |
| Agent for Service of Process: | HEIDI MEIER |
| Agent Address: | 39252 WINCHESTER RD, SUITE 107-227 |
| Agent City, State, Zip: | MURRIETA CA 92563 |

\* Indicates the information is not contained in the California Secretary of State's database.

- If the status of the corporation is "Surrender," the agent for service of process is automatically revoked. Please refer to California Corporations Code **section 2114** for information relating to service upon corporations that have surrendered.
- For information on checking or reserving a name, refer to **Name Availability**.
- For information on ordering certificates, copies of documents and/or status reports or to request a more extensive search, refer to **Information Requests**.
- For help with searching an entity name, refer to **Search Tips**.
- For descriptions of the various fields and status types, refer to **Field Descriptions and Status Definitions**.

**Modify Search     New Search     Printer Friendly     Back to Search Results**

**Privacy Statement | Free Document Readers**

Copyright © 2016     California Secretary of State